**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 93-1670

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BENNY LAVERN COLLINS,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

(December 2, 1994)

Before POLITZ, Chief Judge, GOLDBERG and DUHÉ, Circuit Judges.

POLITZ, Chief Judge:

Benny Lavern Collins appeals his convictions for obstructing commerce by robbery[1] and for using or carrying a firearm during a crime of violence.[2] We affirm in part and reverse in part.

Background

On October 30, 1991, Collins robbed a Denny's restaurant in Dallas, Texas at gunpoint. Despite a high-speed chase and

---

[1] 18 U.S.C. § 1951(a), also known as the "Hobbs Act."

[2] 18 U.S.C. § 924(c)(1).

subsequent manhunt, Collins eluded authorities. Shortly thereafter Collins appeared at the home of Steve Winn, an employee of a national computer company whom he robbed at gunpoint, absconding with cash, jewelry, clothes, and Winn's Mercedes-Benz with its cellular telephone. After abandoning the car in Houston, Collins flew to Los Angeles. In due course he was arrested there and returned to Texas.

Collins was indicted, tried, and found guilty by a jury of obstruction of interstate commerce by robbing a Denny's restaurant employee, using a firearm during this crime of violence, obstruction of interstate commerce by robbing Steve Winn, and using a firearm during this crime of violence. The district court sentenced Collins to concurrent 250-month sentences on the section 1951(a) violations, and a total of 300 months on the section 924(c)(1) violations, to run consecutively to the sentences imposed for the section 1951(a) violations. The instant appeal timely followed.

<u>Analysis</u>

Collins first challenges the use of his confession at trial, claiming that it was not free and voluntary because he was not properly informed of his constitutional right to counsel and his guaranty against self-incrimination. The district court found that Collins' confession was the product of a knowing and voluntary waiver of his **Miranda**[3] rights, and declined to suppress the evidence.

---

[3]**Miranda v. Arizona**, 384 U.S. 436 (1966).

2

For the confession to be admissible at trial the government had to show that Collins was informed of his **Miranda** rights and that his waiver thereof and the resultant confession were the "product of a free and deliberate choice."[4]

Collins maintains that he was never properly informed of his **Miranda** rights as the FBI agents, before the admittedly-custodial interrogation began, failed to reinform him verbally of the full extent of his rights to an attorney and to remain silent. Instead, the agents gave him a written waiver-of-rights form which detailed these rights and then unsuccessfully sought his signature thereon. Collins insists that the mere placement of the form in front of him without some proof that he actually read and comprehended the document was not adequate proof that he was informed of his rights and had waived same. As a consequence, he claims that the subsequent confession was not knowing and voluntary.

It is axiomatic that an accused must be informed of his **Miranda** rights in a way that ensures his knowing, intelligent, and voluntary exercise or waiver thereof.[5] The record supports the district court's finding that Collins was effectively informed of his rights. Collins perused the form for a minute before returning it to the agents with the words "I ain't signing that." One agent testified that Collins appeared to read and understand the form. We perceive no error in the district court's crediting of this

---

[4]**Moran v. Burbine**, 475 U.S. 412, 421 (1986).

[5]**United States v. Montos**, 421 F.2d 215 (5th Cir.), cert. denied, 397 U.S. 1022 (1970).

3

testimony and determining that Collins was informed of and understood his rights[6] considering his age -- 38, his education -- GED degree, and his familiarity with the criminal justice system as a consequence of his extensive criminal history.[7]

Whether Collins waived his **Miranda** rights presented a factual question for the district court.[8] Such waivers may be direct or, in some instances, they may "be clearly inferred from the actions and words of the person interrogated."[9] The mere answering of questions is insufficient to show waiver; however, there must be some affirmative action demonstrating a waiver of Collins' **Miranda** rights.[10] We find such action to be present herein.

The record reflects that after Collins refused to sign the form one of the agents told him, "You know, you can talk to us if you want. You don't have to. You read the form. But if you want to talk to us, you can." At that point Collins replied "Okay."

---

[6]See **United States v. Bailey**, 468 F.2d 652 (5th Cir. 1972) (presentation of written warnings sufficient to satisfy **Miranda**). Accord, **United States v. Van Dusen**, 431 F.2d 1278 (1st Cir. 1970), and **Fritts v. United States**, 395 F.2d 219 (5th Cir. 1968).

[7]See **Poyner v. Murray**, 964 F.2d 1404 (4th Cir.), cert. denied, _____ U.S. _____, 113 S.Ct. 49 (1992). The contention that the agent was unable to determine if Collins actually read the form is "specious," as "it would likewise be impossible to attest that someone is in fear of pain, or that a person understood what he was saying; yet the abstract plausibility of such epistemological skepticism does not justify actual doubts in either everyday life or the law which governs it." **United States v. Heredia-Fernandez**, 756 F.2d 1412, 1416 (9th Cir.), cert. denied, 474 U.S. 836 (1985).

[8]**United States v. Foy**, 28 F.3d 464 (5th Cir. 1994).

[9]**North Carolina v. Butler**, 441 U.S. 369, 373 (1979).

[10]See **McDonald v. Lucas**, 677 F.2d 518 (5th Cir. 1982).

4

Thereafter, upon being questioned about the Dallas robberies he confessed. In this setting, the trial court did not err in finding that Collins waived his **Miranda** rights. The confession was properly admitted.[11]

Collins next claims that the evidence is insufficient to support a finding that his robbery of Winn obstructed interstate commerce, an essential element of federal criminal jurisdiction.[12] Such challenges to evidentiary sufficiency are reviewed in the light most favorable to the verdict, inquiring only whether a rational juror could have found each element of the crime proven beyond a reasonable doubt.[13]

At trial the government argued that Collins' theft of Winn's personally-owned vehicle affected interstate commerce by the consequent adverse effect on the company's potential for conducting interstate business -- the robbery prevented Winn from attending a business meeting and prevented his use of his cellular phone to make business calls. Alternatively, the government contended that as the stolen vehicle had traveled in interstate commerce, its theft somehow affected it. Although the government need only show

---

[11]Even if there were error in the admission of the confession it would be harmless in light of the overwhelming evidence linking Collins to the robberies, including his positive identification as the perpetrator by all of the victims and eyewitnesses, the presence of his checkbook and prescription bottle in the getaway vehicle, his fingerprints found at the Winn residence, and his possession of the jewelry, clothes, and vehicle stolen from Winn. See **Chapman v. California**, 318 U.S. 18 (1967), and **Arizona v. Fulminante**, 499 U.S. 279 (1991).

[12]**Stirone v. United States**, 361 U.S. 212 (1960).

[13]**Jackson v. Virginia**, 443 U.S. 307 (1979).

5

that the robbery of Winn had a *de minimis* effect on interstate commerce to secure federal jurisdiction under section 1951(a),[14] both of these propositions are too attenuated to satisfy the interstate commerce requirement.

Both direct[15] and indirect affects on interstate commerce may violate section 1951(a).  The government's "depletion-of-assets" theory falls into the indirect category.  This theory relies on a minimal adverse effect upon interstate commerce caused by a "depletion of the resources of the business which permits the reasonable inference that its operations are obstructed or delayed."[16]  This thesis usually is applied to businesses or similar entities engaged in interstate commerce,[17] as "[i]n general . . .

---

[14]**United States v. Wright**, 797 F.2d 245 (5th Cir. 1986), cert. denied, 481 U.S. 1013 (1987).

[15]See **United States v. Stephens**, 964 F.2d 424 (5th Cir. 1992) (extortion of interstate travelers directly affected interstate commerce); **United States v. Heidecke**, 900 F.2d 1155 (7th Cir. 1990) (extortion of funds for driver's license from traveling salesman directly violative of Act); and **United States v. Jarabek**, 726 F.2d 889 (1st Cir. 1984) (extortion of business engaged in interstate commerce directly violates section 1951(a)).

[16]**Esperti v. United States**, 406 F.2d 148, 150 (5th Cir.), cert. denied, 394 U.S. 1000 (1969).

[17]See **United States v. Martinez**, 38 F.3d 444 (5th Cir. 1994) (robbery-induced closure of business dealing in interstate goods interrupts flow of interstate commerce); **United States v. Richard**, 9 F.3d 102 (5th Cir. 1993) (unpublished opinion) (temporary closure of store following robbery sufficient interference with interstate commerce); **United States v. Frasch**, 818 F.3d 631 (7th Cir. 1987) (payment of bribe affects business's purchase of interstate goods); **United States v. Curcio**, 759 F.2d 237 (2d Cir.), cert. denied, 474 U.S. 848 (1985) (extortionate conduct toward a bar affects interstate liquor purchases); and **United States v. Pearson**, 508 F.2d 595 (5th Cir.), cert. denied, 423 U.S. 845 (1975) (robbery of hotel affects interstate commerce).

6

businesses purchase on a larger scale than individuals[, and] extortion [and robbery are] likely to have a greater effect on interstate commerce when directed at businesses rather than individuals."[18]

Criminal acts directed toward individuals may violate section 1951(a) only if: (1) the acts deplete the assets of an individual who is directly and customarily engaged in interstate commerce;[19] (2) if the acts cause or create the likelihood that the individual will deplete the assets of an entity engaged in interstate commerce;[20] or (3) if the number of individuals victimized or the sum at stake is so large that there will be some "cumulative effect on interstate commerce."[21] "However, as broadly as the extension of the interstate commerce requirement has spread, we are still a federal, not a unitary government"[22] and, "neither the

---

[18]**United States v. Boulahanis**, 677 F.2d 586, 590 (7th Cir.), cert. denied, 459 U.S. 1016 (1982).

[19]**United States v. Merolla**, 523 F.2d 51 (2d Cir. 1975).

[20]See **United States v. DeParias**, 805 F.2d 1447 (11th Cir.), cert. denied, 482 U.S. 916 (1986) (kidnapping and extortion created the probability of using interstate entity's funds to pay ransom), and **United States v. Chiantese**, 582 F.2d 974 (5th Cir. 1978), cert. denied, 441 U.S. 922 (1979) (attempted extortion of individual could cause depletion of funds of his interstate business).

[21]**Jund v. Town of Hempstead**, 941 F.2d 1271, 1285 (2d Cir. 1991). See also **United States v. Farrell**, 877 F.2d 870 (11th Cir.), cert. denied, 493 U.S. 922 (1989) (extortionate sum demanded from individuals so high that it "would have affected interstate commerce to a legally cognizable degree"), and **United States v. Murphy**, 768 F.2d 1518 (7th Cir. 1985), cert. denied, 475 U.S. 1012 (1986) (payment of bribes by lawyers depleted aggregate ability to purchase law books and office supplies that moved in interstate commerce).

[22]**United States v. Buffey**, 899 F.2d 1402, 1404 (4th Cir. 1990).

constitutional limits on the power of the national government, nor the jurisdictional requirement of some connection with interstate commerce may be ignored."[23]

In this case the government showed neither a robbery of a business nor an actual or potential direct effect on a business caused by the robbery of an individual. Nor did the government show the robbery of an individual directly engaged in interstate commerce, or the robbery of so many individuals or of so great a sum that interstate commerce realistically would be affected. Rather, the evidence establishes that Winn was an individual whose only connection with interstate commerce was his employment by a business engaged in interstate commerce. It is suggested that the robbery might have affected the performance of his employment duties. This linkage to his business is much too indirect to present a sufficient nexus with interstate commerce to justify federal jurisdiction.

We are persuaded that if the robbery of an individual were found to affect interstate commerce merely because of the real or perceived disruption of the individual's business by interfering with his work, the reach of section 1951(a) would be ubiquitous, and any robbery, in our closely-interwoven economy, arguably would affect interstate commerce. Given the fact that "[t]he Hobbs Act definition of commerce is coextensive with the constitutional

---

[23]**United States v. Mattson**, 671 F.2d 1020, 1023 (7th Cir. 1982).

definition,"[24] and that the congressional commerce power extends only to conduct which "exerts a substantial economic effect on interstate commerce,"[25] it is manifest that Congress may not regulate conduct that, standing alone, does not directly affect interstate commerce or have a direct effect on a business engaged in interstate commerce.

A finding of the requisite nexus herein would be in stark conflict with the principle that our federal government has limited and enumerated powers, with routine police power generally being reserved to the states.[26] Such a facile construction of the Hobbs Act as suggested by the government would ignore the tenet that, "unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance."[27] There is no such intent in either the express language or legislative history of the Hobbs Act. To the contrary, it is clear that the Hobbs Act was intended to reach only certain activities that hamper interstate business, reflecting the long-recognized principle that the states are best positioned and equipped to enforce the general criminal laws.[28] We are persuaded that the robbery of Winn -- which

---

[24]**United States v. Hanigan**, 681 F.2d 1127, 1130 (9th Cir. 1982), cert. denied, 459 U.S. 1203 (1983).

[25]**United States v. Lopez**, 2 F.3d 1342, 1361 (5th Cir. 1993), cert. granted, _____ U.S. _____, 114 S.Ct. 1536 (1994), citing **Wickard v. Filburn**, 317 U.S. 111, 125 (1942).

[26]See **Gregory v. Ashcroft**, 501 U.S. 452 (1991), and **Lopez**.

[27]**United States v. Bass**, 404 U.S. 336, 349 (1971).

[28]See 91 Cong. Rec. 11910, 11922 (1945). See also **United States v. Culbert**, 435 U.S. 371 (1978).

9

caused only a speculative <u>indirect</u> effect on a business engaged in interstate commerce -- falls into this general category of crimes which the states are best equipped to handle and, in the absence of evidence showing some direct or substantial indirect effect on interstate commerce, the Hobbs Act does not apply. The conviction of Collins for a Hobbs Act violation as a consequence of the Winn robbery must be reversed.[29]

Collins also correctly claims that if the Winn-related conviction is reversed the attendant unlawful use of a firearm charge must also fall. Section 924(c)(1) requires that the underlying offense be a federal crime and, as the robbery-of-Winn conviction for violation of section 1951(a) is now voided, the conviction for unlawful use of a firearm during that robbery also must be reversed.

Collins further correctly notes that the sentences imposed for his violations of section 1951(a) were excessive and must be vacated. The district court, pursuant to the Guidelines, determined the sentencing range for each violation of section 1951(a) to be 210-262 months, and sentenced Collins to 250 months on each count. Sentences may not exceed the maximum statutory

---

[29]The same considerations bar the government's alternative argument that, as the stolen car itself had once traveled in interstate commerce, its theft somehow affected interstate commerce. This contention is based on a misplaced reliance on **United States v. Samuels**, 14 F.3d 52 (5th Cir. 1993) (unpublished opinion), which found a section 1951(a) violation in the theft of a business-owned vehicle. We decline the invitation to extend this holding to the theft of a privately-owned vehicle.

limit.[30]  The maximum sentence for a section 1951(a) violation is 240 months.  As we have reversed the conviction and sentence on the Winn-robbery section 1951(a) count, we need only vacate and remand for resentencing on the Hobbs Act count for the Denny restaurant robbery.

Capsulating, we AFFIRM the section 1951(a) conviction for the Denny restaurant robbery but VACATE the sentence imposed and REMAND for resentencing.  We AFFIRM the section 924(c)(1) conviction and sentence for the Denny restaurant-related offense.  We REVERSE the convictions and sentences for the section 1951(a) and section 924(c)(1) charges arising out of the Winn robbery.

---

[30]See **United States v. Taylor**, 868 F.2d 125 (5th Cir. 1989).