**UNITED STATES of America, Plaintiff–Appellee,**

v.

**John LYNCH, Defendant–Appellant.**

**No. 00–30247.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 5, 2001.

Filed Sept. 4, 2001.

Amended March 12, 2002.

Judy Clarke, Federal Defender, Office of Federal Public Defender, Spokane, WA, for the defendant-appellant.

Bernard F. Hubley, Assistant United States Attorney, Helena, MT, and Joseph E. Thaggard, Special Assistant, United States Attorney Office, Missoula, MT, for the plaintiff-appellee.

Before WALLACE, HALL, and T.G. NELSON, Circuit Judges.

## ORDER AND AMENDED OPINION

WALLACE, Circuit Judge.

### ORDER

The mandate issued November 7, 2001, is hereby recalled for the purpose of amending the opinion.

The slip opinion filed September 4, 2001 is hereby amended as follows:

On page 12136, first paragraph, line six, delete "conviction and sentence" and replace it with "district court's denial of Lynch's Rule 29 motion . . . ."

Page 12136, second paragraph, line three, delete "It is still unknown who pulled the trigger but it is clear that Lynch, with the aid of co-defendant Pizzichiello," and replace it with "Pizzichiello testified that Lynch killed Carreiro and that he and Lynch . . . ."

Page 12144, second full paragraph, line seven, delete "Because we here adopt a new jurisdictional test for alleged Hobbs Act violations, there has been no opportunity for the parties to present evidence on this critical issue. We believe the district court should have the first opportunity to apply the new test and take such evidence it deems appropriate."

Page 12144, third full paragraph, line one, delete "We therefore vacate Lynch's conviction and sentence under the Hobbs Act and remand for a determination whether he . . ." and replace it with "We therefore vacate the district court's denial of Lynch's Rule 29 motion and remand for a determination whether the evidence presented at trial supports the conclusion that Lynch . . . ."

Page 12144, third full paragraph, line ten, delete "reinstitute the conviction and sentence; if not, it should dismiss the indictment with prejudice." and replace it with "again deny Lynch's Rule 29 motion; if not, it should grant the motion and dismiss his indictment with prejudice."

Page 12145, line seven, delete "Lynch's conviction and sentence for carrying or using a firearm in relation to a crime of violence . . ." and replace it with "the district court's denial of this portion of Lynch's Rule 29 motion pending the outcome of the Hobbs Act ruling."

The mandate shall issue forthwith.

### OPINION

Lynch appeals from his conviction and sentence for violation of the Hobbs Act (robbery), 18 U.S.C. §§ 1951(a) and (b), and using or carrying a firearm during a crime of violence, 18 U.S.C. § 924(c)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291. The critical issue before us is whether Lynch's robbery "affects commerce." We vacate the district court's denial of Lynch's Rule 29 motion and remand to the district court to determine if it lacks jurisdiction because of an insufficient nexus between Lynch's actions and interstate commerce.

## I

On August 11, 1995, Brian Carreiro, a Nevada resident, was shot and killed in Montana near property owned by Lynch's father. Pizzichiello testified that Lynch killed Carreiro and that he and Lynch dismembered Carreiro's body, burned it in a barrel, and then pulverized the charred bones with rocks. Lynch and Pizzichiello then took Carreiro's ATM card and his truck and returned to Nevada. Lynch and Pizzichiello used the ATM card in Montana and Utah to take roughly $5000 from Carreiro's Nevada bank account.

Authorities in Las Vegas, Nevada, began investigating Carreiro's disappearance and eventually obtained authorization to place wiretaps on the telephones of Lynch and Pizzichiello. From evidence obtained from the wiretaps, the Las Vegas police realized that Carreiro had probably been killed in Montana, not Nevada. The case was turned over to Montana authorities, and Lynch and Pizzichiello were each tried separately in that state. Over Lynch's objections, the Nevada wiretap evidence was admitted at his state trial. Lynch was convicted of deliberate homicide, tampering with physical evidence, and two counts of robbery and was sentenced to life imprisonment.

The Supreme Court of Montana reversed Lynch's convictions, holding that the use of the Nevada wiretap information violated Montana law. *Montana v. Lynch*, 292 Mont. 144, 969 P.2d 920 (1998). Undaunted by the state court defeat, federal prosecutors indicted Lynch and Pizzichiello in federal court (where it was hoped the Nevada wiretaps would be admissible) for violations of the Hobbs Act and using or carrying a firearm in relation to a Hobbs Act crime of violence. Pizzichiello agreed to testify against Lynch, the wiretap evidence was admitted at trial, and Lynch was convicted and sentenced to 300 months of incarceration. The jury, however, failed to make a special finding that it was Lynch who shot Carreiro, thus precluding a life sentence under 18 U.S.C. § 924(j).

## II

Lynch contends that his conviction under the Hobbs Act must be overturned because the federal government failed to establish that it had jurisdiction to prosecute the robbery of Carreiro, a private individual. The Hobbs Act makes it a crime to "obstruct[ ], delay[ ], or affect[ ] commerce or the movement of any article or commodity in commerce, by robbery . . . ." 18 U.S.C. § 1951(a). We have held that the government "need prove that a defendant's acts had only a *de minimis* effect on interstate commerce" to satisfy this jurisdictional element of the Hobbs Act. *United States v. Atcheson*, 94 F.3d 1237, 1241 (9th Cir.1996). We have not, however, previously addressed Lynch's more specific argument, which is that we should follow the lead of several of our sister circuits and distinguish between the robbery of a business and the robbery of an individual in defining what constitutes de minimis effect on interstate commerce. *See United States v. Huynh*, 60 F.3d 1386, 1389 (9th Cir.1995) (discussing the argument but declining to address it because it was not outcome determinative). Whether to adopt the de minimis effect definition proposed by Lynch is a question of law which we review de novo. *See United States v. Lang*, 149 F.3d 1044, 1046 (9th Cir.1998).

### A.

The issue before us is not a simple one. We do not deal here with the guilt or innocence of Lynch; rather, we examine whether this conviction is based upon jurisdiction allowable under the foundation of our governance structure. Con-

gress meant for the Hobbs Act to reach as far as the Commerce Clause of the United States Constitution would allow. *U.S. v. Pascucci*, 943 F.2d 1032, 1035 (9th Cir. 1991). Consequently, an inquiry into the reach of the Hobbs Act is the same as an inquiry into the limits imposed on Congress by the Commerce Clause. We therefore must decide whether the Commerce Clause permits the federal government to exercise jurisdiction over Lynch.

The Constitution established a limited central government with all remaining power to be left to the individual states. *See United States v. Lopez*, 514 U.S. 549, 552, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (" 'The powers delegated by the proposed Constitution to the federal government are few and defined. Those which are to remain in the State governments are numerous and indefinite.' " *Quoting* The Federalist No. 45 (James Madison)). One of the powers the Constitution delegates to Congress is that of regulating Commerce "among the several States." U.S. Const. art. I., § 8, cl. 3. This power is not, however, without limits. *Lopez*, 514 U.S. at 553, 115 S.Ct. 1624 (" 'It is not intended to say that these words [in the Constitution] comprehend that commerce, which is completely internal, which is carried on between man and man in a State, or between different parts of the same State, and which does not extend to or affect other States.' " *Quoting Gibbons v. Ogden*, 22 U.S. 1(9 Wheat.), 6 L.Ed. 23 (1824)). Recently, the Supreme Court has again emphasized that, in drawing the line between federal and state jurisdiction,

> the scope of the interstate commerce power must be considered in the light of our dual system of government and may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and

create a completely centralized government.

*United States v. Morrison*, 529 U.S. 598, 608, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000) (internal quotations omitted).

■ In *Atcheson*, we held that jurisdiction over a violation of the Hobbs Act could be supported by only a de minimis effect on interstate commerce, including a de minimis effect that was probable rather than actual. 94 F.3d at 1243. This standard respects the line dividing federal jurisdiction from state jurisdiction because the Hobbs Act "is aimed at a particular type of economic activity, and contains an express jurisdictional requirement...." *Id.* at 1242. Further, the de minimis effect test is consistent with the Supreme Court's holding that "where a general regulatory statute bears a substantial relation to commerce, the de minimis character of individual instances arising under that statute is of no consequence." *Lopez*, 514 U.S. at 558, 115 S.Ct. 1624 (internal quotation marks omitted) (emphasis omitted); *see also Atcheson*, 94 F.3d at 1242. The de minimis effect standard, however, is not a means for the federal government "to pile inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *Lopez*, 514 U.S. at 567, 115 S.Ct. 1624. Thus, for example, if the regulated activity "is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce," not even a de minimis effect on interstate commerce will have been demonstrated. *Id.*

The Hobbs Act presents us, however, with the difficulty of analyzing activities that always carry with them an economic component. By definition, robbery and extortion involve the forced transfer of currency or of goods that can be ex-

changed for currency. Yet, robbery and extortion, particularly of individuals, have traditionally been the province of the states. In addition, the taking of small sums of money from an individual has its primary and direct impact only on that individual and not on the national economy. Several of our sister circuits have identified the difficulty inherent in respecting the line between state and federal jurisdiction when applying the Hobbs Act to defendants charged with the robbery or extortion of private individuals. *See United States v. Diaz*, 248 F.3d 1065, 1084–85 (11th Cir.2001); *United States v. Wang*, 222 F.3d 234, 238–40 (6th Cir.2000); *United States v. Quigley*, 53 F.3d 909, 910–11 (8th Cir.1995); *United States v. Collins*, 40 F.3d 95, 99–101 (5th Cir.1994); *United States v. Buffey*, 899 F.2d 1402, 1404–06 (4th Cir.1990); *United States v. Mattson*, 671 F.2d 1020, 1023–25 (7th Cir.1982).

In *United States v. Collins*, the Fifth Circuit formulated a test for determining when the robbery or extortion of an individual would have the requisite de minimis effect. 40 F.3d at 100. Under this test, crimes directed toward an individual violate the Hobbs Act only if:

> (1) the acts deplete the assets of an individual who is directly and customarily engaged in interstate commerce; (2) if the acts cause or create the likelihood that the individual will deplete the assets of an entity engaged in interstate commerce; or (3) if the number of individuals victimized or the sum at stake is so large that there will be some cumulative effect on interstate commerce.

*Id.* (internal footnotes and quotation omitted). This test respects the principles that "we are still a federal, not a unitary government and neither the constitutional limits on the power of the national government, nor the jurisdictional requirement of some connection with interstate commerce may be ignored." *Id.* This test also re-serves to the States the prosecution of robberies and extortionate acts that have only a speculative, indirect effect on interstate commerce.

Based on these same principles of federalism, the Eighth and Eleventh Circuits have expressly adopted the *Collins* test. *Diaz*, 248 F.3d at 1084–85 (11th Cir.); *Quigley*, 53 F.3d at 910–11 (8th Cir.). Without adopting a specific test, the Fourth, Sixth, and Seventh Circuits have also distinguished between the robbery of a private individual and the robbery of a business or business person in determining whether the federal government may prosecute under the Hobbs Act. *Wang*, 222 F.3d at 238–39 (6th Cir.); *Buffey*, 899 F.2d at 1404–06 (4th Cir.); *Mattson*, 671 F.2d at 1024–25 (7th Cir.).

We have also, in a different context, relied upon the distinction between a business and a private individual when analyzing the reach of the Commerce Clause. *See United States v. Pappadopoulos*, 64 F.3d 522 (9th Cir.1995). In *Pappadopoulos*, we held that the federal government lacked jurisdiction to prosecute the arson of a private, noncommercial residence. Although *Pappadopoulos* applied the then used substantial effect standard rather than the de minimis effect standard, its rationale for drawing a distinction between the private and the commercial applies to our present discussion. In that case, we emphasized, as did the court in *Collins*, the importance of federalism, stating, "[W]e must jealously preserve the balance of power between the federal and state governments." *Id.* at 528. We explained that the case involved "a simple state arson crime [that] should have been tried in state court." *Id.* We further stated, "[i]f the Commerce Clause were extended to reach the activity that the government seeks to punish here, we would be hard-pressed to posit any activity by an individual that

Congress is without power to regulate." *Id.* at 527 (internal quotation marks omitted). These statements are equally applicable to the robbery of small sums from an individual who is not directly involved in interstate commerce.

The government argues that our holding in *Atcheson* precludes us from adopting the Fifth Circuit's test in *Collins.* However, that case did not address the specific question raised here by Lynch: whether we should distinguish between the robbery of a business and the robbery of an individual in defining what constitutes a de minimis effect on interstate commerce. Further, had the *Collins* test been applied, the result would have been the same. In *Atcheson,* the defendant specifically targeted *"business* men and women" in order to deplete their assets, 94 F.3d at 1240 (emphasis added). *See Diaz,* 248 F.3d at 1090 (holding that "deplete" means "to lessen in number, quantity ... or value" (internal quotation marks omitted)). Thus, the de minimis effect on interstate commerce would have been present through the application of the first part of the *Collins* test. In addition, since deciding *Atcheson,* the Supreme Court has issued its opinion in *Morrison.* In that case, the Court stated that it could think of "no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims." 529 U.S. at 618, 120 S.Ct. 1740. As we have discussed, robbery does have an economic component; however, that economic component must rise above the simple, though forced, economic transaction between two individuals. Otherwise, almost any violent property crime would be transformed into a federal offense, contrary to the teachings of *Morrison.*

Similarly, the government is not aided by *United States v. Pascucci,* 943 F.2d 1032, 1035 (9th Cir.1991). As in *Atcheson, Pascucci* does not address the question posed by Lynch. Further, the victim in *Pascucci* was a car dealer placement representative, whose primary responsibility was to travel within the five-state area of Kansas, Missouri, Nebraska, Iowa, and Illinois. *Id.* at 1033. Thus, the victim was an individual "directly and customarily engaged in interstate commerce." *Collins,* 40 F.3d at 100. While the attempted extortion involved the small sum of $5000, that amount would have "depleted" the victim's assets.

This leads us to the question raised by Lynch in this appeal: whether we should adopt the test employed by the Fifth, Eighth, and Eleventh Circuits, which is consistent with the similar business/individual distinction drawn by the Fourth, Sixth, and Seventh Circuits. We have canvassed the appellate decisions in this area and have found no opinion in which a court has rejected the distinction between individuals and businesses after having expressly considered the issue. Our stated position is not to create a circuit division of authority unless there is good reason to do so; that is, there is a presumption that we should not create an intercircuit conflict. *See United States v. Chavez–Vernaza,* 844 F.2d 1368, 1374 (9th Cir.1987).

Here, there are additional reasons for following the course laid out by our sister circuits. First, the Hobbs Act has nationwide criminal application; as a matter of fairness, defendants should be treated equally throughout the nation. A commonly used jurisdictional test would advance that goal. Second, the proposed test provides defendants with "some means of knowing which of the two governments" will have oversight over their actions. *See Lopez,* 514 U.S. at 576–77, 115 S.Ct. 1624 (Kennedy, J., concurring). The simple robbery of an individual does

not provide notice that the defendant may be held accountable before a federal tribunal. Third, the Fifth Circuit test is a practical way of defining what might otherwise be a never-ending catch-all for what should be state offenses. Finally, the test is fully consistent with the Supreme Court's recent admonition in *Morrison.* This test would do just the opposite of "effectually obliterat[ing] the distinction between what is national and what is local ..." *Morrison,* 529 U.S. at 608, 120 S.Ct. 1740 (internal quotations omitted).

We realize there is some language in some of our cases that gives us pause, but we conclude that the case holdings do not prevent us from joining the other circuits. We therefore adopt the test enumerated by the Fifth Circuit in *Collins.*

### B.

Our task is now to determine how to apply the *Collins* test to the case before us. Lynch was charged with the commission of terrible acts that were in violation of state law. But the only connection of those actions to interstate commerce was the robbery of Carreiro's truck and ATM card, which was used to take roughly $5000 from a private bank account.

We therefore vacate the district court's denial of Lynch's Rule 29 motion and remand for a determination whether the evidence presented at trial supports the conclusion that Lynch (1) stole from a person "directly and customarily engaged in interstate commerce;" (2) created a likelihood that the assets of an entity engaged in interstate commerce would be depleted; or (3) victimized a large number of individuals or took a sum so large that there was "some cumulative effect on interstate commerce." 40 F.3d at 100. If the district court concludes there is federal jurisdic-

tion under the new test, it should again deny Lynch's Rule 29 motion; if not, it should grant the motion and dismiss his indictment with prejudice.

### III

18 U.S.C. § 924(c) imposes additional penalties for "whoever, during and in relation to any crime of violence ... *for which he may be prosecuted in a court of the United States* " uses or carries a firearm. (Emphasis added). Federal jurisdiction over Lynch's conviction pursuant to 18 U.S.C. § 924(c) is thus dependant on the court having jurisdiction over the robbery under the Hobbs Act. *See United States v. Staples,* 85 F.3d 461, 463 (9th Cir.1996). We therefore must also vacate the district court's denial of this portion of Lynch's Rule 29 motion pending the outcome of the Hobbs Act ruling. The outcome of this conviction will be the same as the outcome of the Hobbs Act conviction.

VACATED AND REMANDED.