**UNITED STATES of America,
Plaintiff,**

v.

**John Lanny LYNCH, Defendant.**

**No. CR 99–18–M–DWM.**

United States District Court,
D. Montana,
Missoula Division.

June 26, 2002.

---

Judy Clarke, Roger Peven, Federal Defenders of Eastern Washington and Idaho, Spokane, WA, for defendant.

Bernard F. Hubley, Office of The U.S. Attorney, Joseph Thaggard, Office of the Montana Attorney General, Helena, MT, for USA.

## ORDER

MOLLOY, Chief Judge.

### I. Introduction

This Court denied Defendant Lynch's motion under Rule 29 during the jury trial on this matter. Upon appeal, the Ninth Circuit remanded this case instructing me to determine

> whether the evidence presented at trial supports the conclusion that Lynch (1) stole from a person "directly and customarily engaged in interstate commerce;" (2) created a likelihood that the assets of an entity engaged in interstate commerce would be depleted; or (3) victimized a large number of individuals or took a sum so large that there was "some cumulative effect on interstate commerce."

*United States v. Lynch*, 282 F.3d 1049, 1055 (9th Cir.2002)(relying on *United States v. Collins*, 40 F.3d 95, 99–101 (5th Cir.1994)). Federal jurisdiction under the Hobbs Act exists if there is a *de minimis* effect on commerce under any of the three prongs of the test delineated above by the Ninth Circuit.

The Ninth Circuit has instructed me to deny Lynch's Rule 29 motion if I find federal jurisdiction under its new test for measuring the interstate commerce nexus for robberies of individuals. If the connection exists, as the test is laid out for the first time in this case, then Lynch's conviction and sentence stand. Absent a finding of the necessary jurisdictional nexus, on the other hand, means that I must dismiss Lynch's Indictment with prejudice. *Lynch*, 282 F.3d at 1055.

### II. Analysis

▮ The jury here found beyond a reasonable doubt that Lynch was guilty of the Hobbs Act crime for which he was indicted. Normally the issue of jurisdiction is a question of law that is reviewed *de novo*.

*United States v. Gomez*, 87 F.3d 1093, 1097 n. 3 (9th Cir.1996).

> But if this issue is resolved by the jury, then the standard for reviewing the sufficiency of the evidence to support a jury verdict is given by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560[ ](1979): If upon reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Id.*

The government argues that there was a *de minimis* effect on commerce here under all three prongs of the *Collins* test. First, it argues that Brian Carreiro was directly and customarily involved in interstate commerce because he regularly used his bank debit card. Regardless of the point of origin of the use of the card, a request on the card to make charges or withdraw cash from Carreiro's credit union account in Nevada routed through a server in Kansas to the credit union in Nevada and then back to Kansas and back to the point of origin of the request. The government argues that the interstate electronic connections are sufficient nexus to establish a *de minimis* effect. In response, Lynch argues that Carreiro had no business connection to interstate commerce, but that he merely used his debit card as an individual. Lynch argues that the critical distinction posited by the court in *United States v. Atcheson*, 94 F.3d 1237, 1240 (9th Cir.1996), is not that credit cards were robbed and used, but rather that credit cards of businesspeople were robbed and used.

The government next contends that Lynch created a likelihood that the assets of an entity engaged in interstate commerce would be depleted by removing money from the credit union where Carreiro had his account. Essentially the government argues that custodial depository accounts, including Carreiro's account, are considered assets of a financial institution, not just the assets of the individual depositor. If the depository accounts are assets of the institution, then Lynch depleted the assets by remotely withdrawing money from Carreiro's account. Lynch responds that the funds in Carreiro's account at the credit union were solely Carreiro's own private assets, and not the assets of the credit union, therefore there was no risk that the assets of an institution engaged in interstate commerce could be depleted.

The government finally asserts that there was a cumulative effect on interstate commerce here because there were several victims and the funds stolen constituted all the money Carreiro had. Lynch responds that Carreiro was the sole victim here and the $5,000 stolen is not large by general standards, therefore the cumulative effect had no effect on interstate commerce.

■ Application of the *Collins* test to the facts in evidence in this matter shows that jurisdiction under the Hobbs Act is proper because the robbery of Carreiro had the requisite *de minimis* effect on interstate commerce under the first two prongs of the *Collins* test. Carreiro customarily and directly engaged in interstate commerce through use of his bank debit card. Lynch's acts of using the debit card created the likelihood that the assets of the Las Vegas Federal Credit Union, an entity engaged in interstate commerce, would be depleted. The evidence here does not meet the third prong of the *Collins* test.

Each time Carreiro used his bank card he participated directly in interstate commerce. Any request by him with his debit card to draw funds from his credit union account in Nevada, regardless of his location, was first routed through Kansas to the credit union in Nevada and then back through Kansas to his requesting location.

Remote banking transactions involve the use of the internet and servers and routers, as well as transmission lines, in various states and countries to allow individuals such as Carreiro to conduct their banking transactions from virtually any internet access site or automated teller machine, regardless of their location. Debit cards like Carreiro's are useless unless the mechanisms of interstate commerce are used. Here the use of Carreiro's debit card by Lynch and Pizzichiello was proven to be a critical factor in the depletion of Carreiro's account that facilitated the continuing impact on interstate commerce.

Dorothy Heenan, the central operations manager for the Nevada Federal Credit Union, testified at trial that Brian Carreiro had a debit card for his Nevada Federal Credit Union account. Heenan testified further that use of a ATM/debit card to access accounts at the Nevada Federal Credit Union required access to the Deluxe server located in Kansas, and that each and every debit card transaction triggered a transmission from the location of the ATM to the server in Kansas, then to the Nevada Federal Credit Union for account verification, then back to the Deluxe server in Kansas, and then to the location of the ATM machine where transaction initiated. Heenan testified that the transaction switches between various servers, such as Deluxe, Cirrus, and Tidel, is similar to telephone transaction switches between various telephone companies that carry interstate telephone traffic. Carreiro's bank records, introduced as Exhibit 5 at trial, show that Carreiro used his debit card 29 times in the month of July 1995 alone. Carreiro customarily and directly engaged in interstate commerce. This connection to interstate commerce meets the *de minimis* standard required for jurisdiction under the Hobbs Act.

 Private assets in custodial accounts at banking institutions are assets of the private individual owner of the account, and are normally considered a liability for the custodial banking institution. Lynch's illegal use of Carreiro's card created the likelihood that the credit union would have to use its assets to replace the money missing from Carreiro's account due to Lynch's theft. Testimony at trial showed that Lynch and Larry Pizzichiello used Carreiro's debit card to remove funds from Carreiro's credit union account. A credit union is responsible for using its own assets to replace funds stolen from private accounts from fraudulent use of a debit card. Though a credit union does have criminal and civil remedies available to recoup the assets it must replace, it must deplete its assets even to pursue restitution. The credit union was, and is, an entity engaged in interstate commerce, and stealing money from one of its custodial accounts created the likelihood that its assets would be depleted. This connection to interstate commerce also meets the *de minimis* standard required for jurisdiction under the Hobbs Act.

Wherefore IT IS HEREBY ORDERED that Lynch's Rule 29 motion is DENIED.