**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rafael RODRIGUEZ, Defendant–
Appellant.**

**No. 03–50083.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 5, 2004.

Filed Feb. 23, 2004.

W. Michael Mayock, Law Offices of W. Michael Mayock, Pasadena, CA, for the defendant-appellant.

Brian M. Hoffstadt, Assistant United States Attorney, Los Angeles, CA, for the plaintiff-appellee.

Before: TROTT, RAWLINSON, and BEA, Circuit Judges.

TROTT, Circuit Judge:

Rafael Rodriguez pleaded guilty to and was sentenced for conspiring to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a), after he and two cohorts agreed to rob cocaine traffickers. Rodriguez raises four arguments on appeal: first, he maintains that section 1951 is unconstitutionally vague as it does not provide adequate notice of what conduct is prohibited under its provisions; second, he claims that the government's evidence did not satisfy the Hobbs Act's jurisdictional nexus; third, he asserts that Count Two of the indictment did not sufficiently allege a crime under the statute; and fourth, he argues that the district court failed to exercise its discretion to depart downward from the sentencing guidelines for imperfect entrapment. We have jurisdiction pursuant to 28 U.S.C. § 1291. We hold that none of Rodriguez's claims has merit. Accordingly, we affirm Rodriguez's conviction and sentence.

## BACKGROUND

Rodriguez was charged in a two-count indictment, along with his co-defendants, Jose Luis Robles and Ricardo Figueroa (collectively "defendants"), with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and with conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951, commonly referred to as the Hobbs Act. The charges arose out of an undercover

sting operation organized by the Bureau of Alcohol, Tobacco and Firearms ("ATF") in which defendants agreed to rob cocaine from the stash house of narcotics traffickers. The robbery scheme was coordinated during a meeting between defendants and an undercover ATF agent. Believing that the undercover agent was a runner for narcotics traffickers, defendants agreed to assist in a robbery of the agent's supposed dealers. To carry out their scheme, defendants agreed that they would pose as police officers and conduct a fictitious raid of the stash house, during which they would force the traffickers at gunpoint to lie on the floor and be handcuffed. With the traffickers bound and defenseless, defendants agreed that they would steal approximately 25 kilograms of cocaine. After so agreeing, and in furtherance of the conspiracy, defendants met with people they believed would lead them to the stash house. To this meeting, defendants brought with them necessary police attire, including LAPD T-shirts, security guard badges, and windbreakers.

Defendants were subsequently arrested and indicted. Rodriguez initially entered a plea of not guilty, but on October 25, 2002, he pleaded guilty to Count Two of the indictment, the conspiracy to interfere with commerce. Under the plea agreement, Rodriguez would not be prosecuted for Count One of the indictment, the charge of conspiracy to possess. Rodriguez subsequently filed a motion to arrest judgment, pursuant to Federal Rule of Criminal Procedure 34, which the district court denied on January 17, 2003. On March 3, 2003, the district court sentenced Rodriguez to 63 months of custody and three years of supervised release.

## DISCUSSION

### I. Due Process Vagueness

■ Rodriguez challenges the constitutionality of the Hobbs Act, arguing that the statute is vague and ambiguous regarding its use of the term "commerce." We review de novo a challenge to the constitutionality of a statute on void for vagueness grounds. *United States v. Purdy*, 264 F.3d 809, 811 (9th Cir.2001). To prove that section 1951 is unconstitutionally vague, Rodriguez must show that the statute "(1) does not define the conduct it prohibits with sufficient definiteness and (2) does not establish minimal guidelines to govern law enforcement." *United States v. Davis*, 36 F.3d 1424, 1434 (9th Cir.1994) (citing *Kolender v. Lawson*, 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)). "Where, as here, a statute is challenged as unconstitutionally vague in a cause of action not involving the First Amendment, we do not consider whether the statute is unconstitutional on its face." *Purdy*, 264 F.3d at 811 (citing *United States v. Ocegueda*, 564 F.2d 1363, 1365 (9th Cir.1977)). Rather, we must determine "whether the statute is impermissibly vague *in the circumstances of this case.*" *Id.* (internal citations, quotation marks, and alteration removed).

■ The Hobbs Act prohibits any robbery or extortion or attempt or conspiracy to rob or extort that "in any way or degree obstructs, delays or affects commerce or the movement of any article or commodity in commerce." 18 U.S.C. § 1951(a). We must determine whether the language of the statute put Rodriguez on notice that his conduct was criminal. "The essential purpose of the 'void for vagueness' doctrine is to warn individuals of the criminal consequences of their conduct." *Jordan v. De George*, 341 U.S. 223, 230, 71 S.Ct. 703, 95 L.Ed. 886 (1951); *see also McSherry v. Block*, 880 F.2d 1049, 1052 (9th Cir.1989) ("[C]riminal statutes which fail to give due notice that an act has been made criminal

before it is done are unconstitutional deprivations of due process of law.") (quoting *Jordan*, 341 U.S. at 230, 71 S.Ct. 703).

Courts have previously rejected void for vagueness constitutional challenges to the Hobbs Act as it relates to the sections of the act relating to extortion. *See, e.g., Carbo v. United States*, 314 F.2d 718, 731–32 (9th Cir.1963) (finding Hobbs Act not vague in application to extortion in boxing business); *United States v. Rosa*, 560 F.2d 149, 154 n. 5 (3rd Cir.1977) (rejecting vagueness challenge to section 1951's prohibition on attempted extortion); *United States v. Williams*, 621 F.2d 123, 125 (5th Cir.1980) (rejecting facial challenge to Hobbs Act). Rodriguez's exact claim, however, that section 1951 is vague due to its broad definition of "commerce" is a matter of first impression. Section 1951 defines "commerce" as:

> [1] commerce within the District of Columbia, or any Territory or Possession of the United States; [2] all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; [3] all commerce between points within the same State through any place outside such State and [4] all other commerce over which the United States has jurisdiction.

18 U.S.C. § 1951(b)(3). Rodriguez does not dispute that he and his co-defendants agreed to partake in the robbery of narcotics traffickers. Nor does he dispute that he brought police attire to a meeting in anticipation of conducting the planned raid. Rather, the only question is whether Rodriguez was given sufficient notice that these actions would constitute a federal crime under section 1951.

We find that section 1951's definition of commerce is well-established and therefore not unconstitutionally vague. Under the statute's definition of commerce, the Supreme Court has interpreted jurisdiction under section 1951(a) to be coextensive with the Commerce Clause. *Stirone v. United States*, 361 U.S. 212, 215, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). "Congress meant for the Hobbs Act to reach as far as the Commerce Clause of the United States Constitution would allow.... Consequently, an inquiry into the reach of section 1951 is the same as an inquiry into the limits imposed on Congress by the Commerce Clause." *United States v. Lynch*, 282 F.3d 1049, 1051–52 (9th Cir.2002) (citing *United States v. Pascucci*, 943 F.2d 1032, 1035 (9th Cir.1991)). Thus, notice of the scope of the conduct proscribed by section 1951 is supplied by the common understanding of the reach of the Commerce Clause. This principle guided us in rejecting a similar vagueness challenge to 18 U.S.C. § 1962, the Organized Crime Control Act of 1970. *United States v. Campanale*, 518 F.2d 352 (9th Cir.1975). In *Campanale*, we rejected the vagueness challenge, holding that "[t]he concept of affecting interstate or foreign commerce is so well imbedded in federal law as not to mislead anyone who desires to conform his conduct to the requirements of this law." *Id.* at 364. The same principle mandates our conclusion that the definition of commerce in section 1951 is sufficiently definite and, therefore, not unconstitutionally vague.

## II. Commerce Clause Requirements

Rodriguez contends that the federal government failed to establish that it had jurisdiction to prosecute the conspiracy under the Hobbs Act and that his conviction must be overturned. Specifically, he argues that the government failed to show that the conspiracy for which he was charged was sufficiently connected to interstate commerce. The Hobbs Act criminalizes robberies and conspiracies to rob that obstruct or otherwise affect interstate

or foreign commerce. 18 U.S.C. § 1951. We must determine, therefore, whether the conspiracy to rob suspected drug traffickers in this case had the requisite effect on commerce.

■ It is well-established that the government need only show a de minimis effect on interstate commerce to fulfill the jurisdictional element of the Hobbs Act. *United States v. Panaro*, 241 F.3d 1104 (9th Cir.2001); *United States v. Atcheson*, 94 F.3d 1237, 1242 (9th Cir.1996) (concluding that *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), did not require proof of a "substantial effect" on interstate commerce in Hobbs Act prosecution, but that the continued use of "de minimis" standard was proper); *cf. United States v. Frega*, 179 F.3d 793, 800–01 (9th Cir.1999) (holding RICO constitutional in face of Commerce Clause challenge and *Lopez*'s "substantial effects" test inapplicable as RICO regulates economic activity). Rodriguez asserts that the government could not make this de minimis showing, because the intended robbery victims were "non-existent" individuals and there was no evidence that those non-existent individuals were engaged in interstate commerce.

■ Rodriguez asserted this claim before the district court in his motion to arrest judgment. We review the district court's denial of that motion for an abuse of discretion. *United States v. Baker*, 63 F.3d 1478, 1499 (9th Cir.1995). Because Rodriguez argues that the government failed to present sufficient evidence of a required element of the charged offense, we must construe the evidence in the manner most favorable to the government, drawing all inferences that may reasonably be drawn against the defendant. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ Rodriguez asserts that the government's evidence failed to establish federal jurisdiction because the government was required to satisfy the jurisdictional test put forth in *United States v. Lynch*, 282 F.3d 1049 (9th Cir.2002). In *Lynch*, we established that, for purposes of determining what constitutes a de minimis effect on interstate commerce, the court must distinguish between the robbery of an individual and the robbery of a business. *Id.* at 1051. Specifically, we held that when the government brings charges for robbery under the Hobbs Act, and the target of the robbery was an individual, the government must show that the defendant "(1) stole from a person 'directly and customarily engaged in interstate commerce;' (2) created a likelihood that the assets of an entity engaged in interstate commerce would be depleted; or (3) victimized a large number of individuals or took a sum so large that there was 'some cumulative effect on interstate commerce.' " *Id.* at 1055.

Robbery of an interstate business, on the other hand, typically constitutes sufficient evidence to satisfy the Hobbs Act's interstate commerce element. *Id.* at 1053; *United States v. Collins*, 40 F.3d 95, 99 (5th Cir.1994). We conclude that the conspiracy in this case involved the robbery of a business enterprise and that the government was not required to meet the *Lynch* test for robberies involving individuals.

We disagree with Rodriguez's assertion that the *Lynch* test should apply in this case because there was no specific evidence that the targets of the sting were engaged in interstate commerce. Here, the indictment specifically stated that the intended targets of the robbery were "narcotics *traffickers*," and the plea agreement specified that they were "narcotics *dealers*." (Emphasis added). We find that an intended robbery of cocaine from narcotics

traffickers is the robbery of a business, and do not require the government to make the heightened showing under *Lynch.*

This finding is supported by the rationale behind this distinction drawn between robberies of business and robberies of individuals. *Lynch,* 282 F.3d at 1053. The *Lynch* opinion explained that this distinction reflects the concern with drawing a line between the exercise of federal and state jurisdiction over criminal conduct. *Id.* The panel relied on the Supreme Court's pronouncement that " 'the scope of the interstate commerce power ... may not be extended so as to embrace effects upon interstate commerce so indirect and removed that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government.' " *Id.* at 1052 (quoting *United States v. Morrison,* 529 U.S. 598, 608, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000)). To avoid infringing on the domain of the states, and to assure that the principles of our dual system of government are not undermined, *Lynch* narrowed the reach of the Hobbs Act by requiring a stricter test for prosecutions that involve only the robbery of an individual. *Id.* at 1053. In *Lynch,* the federalism concerns arose because "the only connection ... to interstate commerce was the robbery of [the victim's] truck and ATM card...." *Id.* at 1055. Here, the federalism concerns at the heart of the *Lynch* test are absent: the underlying facts involve narcotics trafficking, a field that Congress specifically regulates under its Commerce Clause authority, and which the courts have consistently upheld. *See, e.g., United States v. Tisor,* 96 F.3d 370, 374 (9th Cir.1996) (finding that Congress did not exceed its authority under Commerce Clause in adopting Controlled Substances Act); *United States v. Leshuk,* 65 F.3d 1105, 1112 (4th Cir.1995) ("[I]ntrastate drug activities regulated in the Drug Act are clearly tied to interstate commerce."); *United States v. Wacker,* 72 F.3d 1453, 1475 (10th Cir.1995) ("Congress made explicit findings explaining the conduct's 'substantial and direct effect upon interstate commerce' "). Accordingly, we find that the *Lynch* test is inapplicable to the facts of this case.

In making this determination, we are cognizant of the Supreme Court's admonition that the de minimis standard is not intended as a means for the federal government "to pile inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *United States v. Lopez,* 514 U.S. 549, 567, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Because the trafficking of narcotics is a federally-regulated activity implicating interstate commerce, we conclude that federal jurisdiction exists to apply the Hobbs Act to conspiracies involving the theft of cocaine from narcotics traffickers. Indeed, we believe that a conspiracy to steal cocaine alone suffices to establish a connection to foreign commerce, because, as other circuits have found, "all cocaine originates overseas." *United States v. Marrero,* 299 F.3d 653, 655 (7th Cir.2002).

Instructive, in this regard, is our decision in *United States v. Staples,* where we upheld the constitutionality of 18 U.S.C. § 924(c)(1) under the Commerce Clause. *Staples,* 85 F.3d 461 (9th Cir.1996). Section 924(c)(1) criminalizes the use or carrying of a firearm "in relation to any crime of violence or drug trafficking crime...." 18 U.S.C. § 924(c)(1). The *Staples* court found that in enacting section 924(c)(1), Congress did not exceed its authority under the Commerce Clause, and explained that a conviction under that section is

premised on an underlying drug trafficking offense, which is "conduct that substantially affected commerce." *Staples,* 85 F.3d at 463; *see also Tisor,* 96 F.3d at 375 (explaining that intrastate drug activities regulated by Drug Act are tied to interstate commerce, as "Congress expressly found that intrastate drug trafficking had a 'substantial effect' on interstate commerce"). The present case is, therefore, distinguishable from the situation in our recent holding in *United States v. McCoy,* where we held that the possession of a single pornographic photograph could not alone constitute a substantial enough effect on interstate commerce to establish a federal crime. 323 F.3d 1114, 1124 (9th Cir. 2003). Here, Congress has specifically found, and this court has reiterated, that intrastate drug activities have a substantial effect on interstate commerce. *Tisor,* 96 F.3d at 375; *cf. Frega,* 179 F.3d at 800–01. Accordingly, we find that a conspiracy to steal cocaine from drug traffickers entails a sufficient showing of an effect on interstate commerce for purposes of establishing federal jurisdiction.

 Rodriguez asserts that, notwithstanding this case law, jurisdiction fails in this case because the conspiracy arose out of a federal law enforcement sting operation, and neither the narcotics nor the narcotics traffickers actually existed. This argument is unpersuasive. First, the non-existent status of the target drug traffickers is inapposite. Impossibility is not a defense to the conspiracy charge. *See United States v. Brooklier,* 685 F.2d 1208, 1217 (9th Cir.1982) (factual impossibility is not a defense to inchoate offense because "actual potential effect on interstate commerce was not a jurisdictional prerequisite for a conviction of conspiracy to violate the Hobbs Act"); *United States v. Bailey,* 227 F.3d 792, 797 (7th Cir.2000) ("[T]he Hobbs Act criminalizes

attempts as well as completed crimes, the government need not even prove that interstate commerce was affected, only that there exists a 'realistic probability' of an effect on commerce."). The government need not show "certainty of effect on commerce; a reasonable probability is enough." *Marrero,* 299 F.3d at 655. It is well-established that, for there to be federal jurisdiction, the government need not show that the actual criminal activity had an impact on commerce; rather, the government need only show that "the class of acts has such an impact." *Id.* (citing *Perez v. United States,* 402 U.S. 146, 153–54, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971)). Moreover, this court has found that it is not necessary for Rodriguez to have been subjectively aware that his actions affect interstate commerce. *United States v. Nelson,* 137 F.3d 1094, 1103 (9th Cir.1998); *Bailey,* 227 F.3d at 799 ("The fact that the connection to interstate commerce under these facts arises primarily from [defendant's] specific intent [to complete the underlying acts] is ... irrelevant."). Finally, this court has previously upheld convictions stemming from law enforcement sting operations, finding that the jurisdictional nexus is not frustrated by the impossibility of the actual robbery. *See, e.g., United States v. Montoya,* 945 F.2d 1068, 1074 (9th Cir.1991) (upholding prosecution for attempted extortion of a fictitious business run by the FBI), *abrogated on other grounds by United States v. Carpenter,* 961 F.2d 824 (9th Cir.1992); *Bailey,* 227 F.3d at 797 (finding that defendant's attempt to rob FBI agent was sufficient because "the Hobbs Act criminalizes attempts as well as completed crimes, [and] the government need not even prove that interstate commerce was affected, only that there exists a 'realistic probability' of an effect on commerce"). Accordingly, we hold that the facts as stated in the plea agreement confirm that there was an ef-

fect on commerce for purposes of satisfying the jurisdictional nexus under the Hobbs Act.

## III. Sufficiency of the Indictment

 We review the sufficiency of an indictment de novo. *See United States v. Enslin*, 327 F.3d 788, 793 (9th Cir.2003). A challenge to an indictment that is first brought on appeal, however, is reviewed for plain error. *United States v. Leos–Maldonado*, 302 F.3d 1061, 1064 (9th Cir. 2002); *United States v. Velasco–Medina*, 305 F.3d 839, 846 (9th Cir.2002). Rodriguez brought his sufficiency argument before the district court in a Federal Rule of Criminal Procedure 34 Motion, after judgment had been entered. Rodriguez argues, therefore, that he is entitled to a de novo review of his indictment. The government contends that this Court should review the indictment for plain error, arguing that his post-judgment Rule 34 motion does not constitute pre-trial review.

We agree with the government. In *Velasco–Medina*, we relied on *United States v. Pernillo–Fuentes*, 252 F.3d 1030 (9th Cir.2001), and explained that de novo review is proper when the defendant had unsuccessfully filed a pre-trial motion to dismiss the indictment *prior to pleading guilty*. *Velasco–Medina*, 305 F.3d at 846; *Pernillo–Fuentes*, 252 F.3d at 1032. In this case, Rodriguez's motion was not filed before he pleaded guilty. Accordingly, we review Rodriguez's challenge to the indictment for plain error. *Velasco–Medina*, 305 F.3d at 846. We note, however, that even if we were to perform a de novo review, Rodriguez's challenge to the indictment would fail.

 An indictment "must be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). "Generally, an indictment is sufficient if it sets forth the elements of the charged

offense so as to ensure the right of the defendant not to be placed in double jeopardy and to be informed of the offense charged." *United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir.1995) (citing *United States v. ORS, Inc.*, 997 F.2d 628 (9th Cir.1993)). "In a Hobbs Act robbery prosecution, the government is required to prove two things: (1) that the defendant either committed or attempted to commit a robbery, and (2) a nexus between the defendant's acts and interstate commerce." *United States v. Woodruff*, 122 F.3d 1185, 1185 (9th Cir.1997) (citing 18 U.S.C. § 1951(a)).

 Count Two of the indictment charged that defendants "conspired and agreed with each other to commit an offense against the United States," and that this offense constituted an "interference with commerce by robbery in violation of" section 1951. The indictment continued by detailing the object of and the overt acts in furtherance of the conspiracy, explaining that defendants agreed to pose as police officers and then rob, at gunpoint, suspected narcotics traffickers. Pursuant to that end, defendants engaged in meetings with people they understood would lead them to the narcotics traffickers' drug stash. Rodriguez asserts that these details are insufficient. Specifically, he asserts that the indictment failed to charge an offense under the Hobbs Act because it failed to include the statutory language that the robbery conspiracy "obstructs, delays or affects" commerce and failed to define "commerce." *See* 18 U.S.C. § 1951(a).

Contrary to Rodriguez's assertions, however, an indictment need not recite the exact statutory language. Indeed, though the interstate commerce nexus is an element that "must be proved at trial[,] ... [o]ur circuit has established that it need not ... be expressly described in the indictment." *Woodruff*, 50 F.3d at 677. In *Woodruff*, we found that "[a]lthough the

indictment contained no facts alleging how interstate commerce was interfered with, and did not state any theory of interstate impact, prior decisions of our court compel the conclusion that the indictment was sufficient as written." *Id.* at 676.

Rodriguez asserts that the indictment in this case failed to meet even this minimal requirement because the indictment did not use the statutory terms "delayed, obstructed or affect" commerce, but rather stated "interfere with commerce." We do not agree. "Interfere," although not in the statute, is a clear synonym for the terms that are.

Our conclusion is reinforced by the particular circumstances of this case. Rodriguez was charged with and pleaded guilty to conspiring to rob narcotics traffickers of 25 kilograms of cocaine. As explained above, *see supra* Part II, narcotics trafficking is an economic activity with interstate commerce implications. *See, e.g., Tisor,* 96 F.3d at 375 ("[D]rug trafficking is a commercial activity which substantially affects interstate commerce."). We believe that a reasonable person would be aware that the trafficking of narcotics is a commercial endeavor, and therefore that stealing cocaine from the stash house of suspected drug traffickers is an activity with interstate commerce implications. Based upon both the common understanding of the reach of the Hobbs Act and the interstate implications of narcotics trafficking, Rodriguez was sufficiently apprised of the charges against him, allowing him to prepare his defense and his plea. Under these facts, we cannot say that the indictment was insufficient. *Woodruff,* 50 F.3d at 677.

IV. Sentencing Decision Denying Downward Departure For Imperfect Entrapment

■ A district court has the discretion to depart downward from the sentencing guidelines upon its finding of improper government action that does not rise to the level of a defense of entrapment. *United States v. Garza–Juarez,* 992 F.2d 896, 911 (9th Cir.1993) (upholding district court's downward departure under section 5K2.12 of the sentencing guidelines for imperfect entrapment).

■ Rodriguez asserts that the district court erred in refusing his request for a downward departure from the sentencing guidelines for imperfect entrapment. The government asserts that, pursuant to his plea agreement, Rodriguez waived his right to appeal any sentence that is within the statutory maximum. We agree with the government. Rodriguez's plea agreement clearly states that he gives up the right to appeal any sentence imposed by the district court. An express waiver of a right to appeal a sentencing determination is valid if made knowingly and voluntarily. *United States v. Baramdyka,* 95 F.3d 840, 843 (9th Cir.1996). Rodriguez does not dispute that his waiver was knowing and voluntary. Moreover, he does not allege that his sentence was illegal, imposed in violation of the plea agreement, or made for racially discriminatory reasons, which constitute exceptions by which his right to appeal would be preserved notwithstanding the waiver. *Id.* at 843–44. Under the express terms of his plea agreement, Rodriguez has, therefore, waived his right to appeal his sentence.

■ Even if we were to find the waiver invalid, our review of the district court's decision to deny a request for downward departure is prohibited. It is well-settled that a district court's refusal to grant a downward departure is completely discretionary and free from appellate review. *United States v. Romero,* 293 F.3d 1120,

1126 (9th Cir.2002); *United States v. Davis,* 264 F.3d 813, 815 (9th Cir.2001). We can only review the decision if the record indicates that the district court failed to recognize its discretionary power to depart from the guidelines. *Romero,* 293 F.3d at 1126. Our review of the sentencing hearing transcript reveals that the district court clearly recognized its discretionary power to depart downward from the sentencing guidelines for imperfect entrapment, and it twice refused to do so. Because the district court considered and refused to exercise its discretion to depart from the sentencing guidelines, we cannot now review that discretionary decision. *Davis,* 264 F.3d at 815.

## CONCLUSION

Rodriguez asserts that there can be no federal crime for this conspiracy because the narcotics he wished to steal, and the drug dealers from whom he wished to steal them, did not actually exist. We cannot agree. In the wonderland of drug enforcement stings, though only the grin may be seen, the cat still remains. Federal jurisdiction is not lost merely because Rodriguez's intentions of robbing a narcotics trafficker could not have come true. Even in the dream-like world of federal sting operations, when you drink from the bottle marked poison, it will disagree with you sooner or later.

Accordingly, Rodriguez's conviction and sentence are

**AFFIRMED.**