Revised August 20, 2001

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-40593

_____

UNITED STATES OF AMERICA,

                                             Plaintiff-Appellee,

                         versus

RAMON AMADO VILLAFRANCA,

                                             Defendant-Appellant.

_____

Appeal from the United States District Court
For the Southern District of Texas

_____

July 25, 2001

Before HIGGINBOTHAM and BENAVIDES, Circuit Judges, and LITTLE,[*]
District Judge.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Ramon Amado Villafranca, a state-court prosecutor from Laredo,
Texas, appeals his conviction and sentence under the Hobbs Act for
fixing drug cases.  He argues that his conduct bore no nexus to
interstate commerce sufficient to create federal jurisdiction or
establish a Hobbs Act violation; that the testimony of the
government's paid informant should not have been admitted; and that
his sentence was improperly calculated under the Sentencing
Guidelines.  Although the district court erred in failing to give

---

[*] District Judge of the Western District of Louisiana, sitting by
designation.

a specific instruction cautioning the jury about the testimony of the paid informant, the error was harmless. We affirm the judgment of the district court.

I

As an Assistant State District Attorney in Laredo, Webb County, Texas, defendant Ramon Villafranca was in charge of the Drug Impact prosecutions in the local district court. In 1996, the FBI, as part of an investigation of public corruption in Webb County, hired Jimmy Salas as a cooperating witness. He was hired to work as a bounty hunter for bail bonding companies, a position often used as an intermediary between defendants seeking to get their cases fixed and public officials. Salas was paid $1,500 a month and given a small apartment. The apartment was constantly monitored, and Salas was also given recording equipment, which he used during the investigation. His contract also stipulated that the FBI would "consider paying SALAS a lump sum payment in an amount to be determined solely by the FBI for his cooperation and the information derived from such. The amount of any lump sum, if any, will be determined by considering factors such as the value of the information provided by SALAS."

Salas worked in this undercover role from 1996 to 1998. During the course of the investigation, Salas was approached by numerous defendants facing drug charges who wanted to get their cases fixed. When Salas first approached Villafranca regarding

such a request, Villafranca said he could take care of it and inquired about how much money the defendant had. After that, Salas worked with Villafranca and a local defense attorney, Ruben Garcia in numerous cases. Villafranca and Garcia would agree that Garcia would take an inflated defense fee from the defendant and split it between himself and Villafranca in return for getting a defendant pretrial diversion, probation, or dismissal of the charges.[1] Villafranca would usually take two or three thousand dollars per case.

Villafranca, along with others, was indicted for one count of conspiracy to obstruct, delay, and affect commerce by means of extortion in violation of the Hobbs Act and three counts of obstructing, delaying, and affecting commerce by means of extortion in violation of the Hobbs Act.[2] After a trial at which Salas testified and Garcia testified pursuant to a plea agreement, the jury convicted Villafranca on the conspiracy count and acquitted him on the other counts. The district court sentenced him to 63 months and fined him $10,000. Villafranca appeals.

II

---

[1] In one case, a defendant caught transporting 121 pounds of marijuana received deferred adjudication and a $1000 fine. In another case, Villafranca got an indictment dismissed (without prejudice) in a case where the defendant was charged with possession of about 700 pounds of marijuana.

[2] *See* 18 U.S.C. § 1951 (2001).

3

Villafranca argues that there is insufficient nexus to interstate commerce to establish federal jurisdiction or to establish a violation of the Hobbs Act.[3]  As the Hobbs Act's required effect on interstate commerce is identical with the requirements of federal jurisdiction under the Commerce Clause, these two challenges requires only a single analysis.[4]  Since we are reviewing a jury verdict, we view the evidence "in the light most favorable to the verdict, inquiring only whether a rational juror could have found each element of the crime proven beyond a reasonable doubt."[5]

While the effect of the defendant's activity on interstate commerce need only be slight,[6] the effect on interstate commerce must not be attenuated.[7]  This circuit has stated, "Criminal acts directed toward individuals may violate section 1951(a) only if: (1) the acts deplete the assets of an individual who is directly and customarily engaged in interstate commerce; (2) [ ] the acts cause or create the likelihood that the individual will deplete the assets of an entity engaged in interstate commerce; or (3) [ ] the

---

[3] *See id.*

[4] *See United States v. Collins*, 40 F.3d 95, 100 (5th Cir. 1994) ("[T]he Hobbs Act definition of commerce is coextensive with the constitutional definition.").

[5] *United States v. Jennings*, 195 F.3d 795, 801 (5th Cir. 1999).

[6] *See United States v. Box*, 50 F.3d 345, 352 (5th Cir. 1995); *United States v. Tomblin*, 46 F.3d 1369, 1382 (5th Cir. 1995); *Collins*, 40 F.3d at 99.

[7] *Collins*, 40 F.3d at 100-01.

4

number of individuals victimized or the sum at stake is so large that there will be some 'cumulative effect on interstate commerce.'"[8]

The result in this case is virtually compelled by the reasoning of *United States v. Box*.[9] In *Box*, this court noted that detaining persons engaged in interstate travel created the effect on interstate commerce necessary to sustain a conspiracy conviction under the Hobbs Act.[10] It also held that interfering with or facilitating narcotics trafficking was sufficient to create an effect on interstate commerce, since drugs are traded on an interstate market.[11] Most of the defendants that paid Villafranca and Garcia to fix their cases were caught while traveling to and from Mexico, and occasionally to and from other states. Many of the defendants were engaged in the shipment of large quantities of drugs. Thus, the extortion by Villafranca involved delaying or expediting the movement of individuals across state and

---

[8] *Id.* at 100.

[9] 50 F.3d 345 (5th Cir. 1995).

[10] *Id.* at 352.

[11] *Id.* at 353.

5

international lines and affected commerce in drugs.[12]   The requirement of a nexus to interstate commerce is met in this case.[13]

III

A

Villafranca challenges the admission of the testimony of Salas on the grounds that Salas was paid for providing information to the government.   In *United States v. Cervantes-Pacheco*,[14] this court, sitting en banc, ruled that the testimony of a paid witness was not per se inadmissible.[15]  We recognized, however, that admitting the testimony of a paid informant raises serious concerns about the fairness of a trial.   We therefore conditioned the admission of such testimony on compliance with four rules: the government must

---

[12] Although *Box* predates the watershed Supreme Court decision in *United States v. Lopez*, 514 U.S. 549 (1995), this circuit has reaffirmed the expansive application of the government's commerce power in the Hobbs Act context and related criminal law contexts. *See United States v. Jennings*, 195 F.3d 795, 801-02 (5th Cir. 1999) (Hobbs Act); *United States v. Meshack*, 225 F.3d 556, 572-73 (5th Cir. 2000) (section 1956 money laundering); *see also United States v. Hickman*, 179 F.3d 230, 231 (5th Cir. 1999) (en banc) (Higginbotham, J., dissenting from affirmance by equally divided court) (noting the reach of the Hobbs Act to interstate travel and economic markets such as illegal drugs).

[13] We do not address the government's more questionable argument that because state coffers were affected by the fixing of cases by Villafranca, interstate commerce was thereby affected.   Also, in fixing at least one case, Salas negotiated a bribe over the phone with a defendant in Tennessee, and later a receipt was sent to Tennessee by fax (presumably by Garcia).   The use of interstate commerce facilities implicates the Commerce Clause, *see, e.g., United States v. Marek*, 238 F.3d 310, 317 (5th Cir. 2001) (en banc), but is not a type of activity listed as falling within the Hobbs Act by our circuit, *see United States v. Collins*, 40 F.3d 95, 100-01 (5th Cir. 1994).

[14] 826 F.2d 310 (5th Cir. 1987) (en banc).

[15] *See id.* at 315-16.

not deliberately use or encourage perjured testimony; the prosecution must comply with *Brady*; the defense must be allowed to fully explore the compensation arrangement on cross-examination; and the district court must give specific instructions to the jury about the credibility of paid witnesses.[16] Citing *Cervantes-Pacheco*, Villafranca argues that the prosecution failed to comply with *Brady* and that the district court failed to give the jury specific instructions on Salas's credibility.

Villafranca argues a *Brady* violation, claiming that although the government disclosed the contract between Salas and the FBI before trial, the government failed to disclose the size of the bonus to be paid to Salas. *Brady v. Maryland*[17] held that "the suppression by the prosecution of evidence favorable to an accused

---

[16] *Id.* at 315-16. Although the opinion in *Cervantes-Pacheco* stated that the district court "should" give such an instruction, *id.* at 316, we went to say that "we hold that the credibility of the compensated witness . . . is for a properly instructed jury to determine." *Id.* Subsequent cases confirm that *Cervantes-Pacheco* requires a specific jury instruction on the credibility of the paid witness. *See United States v. Dukes*, 139 F.3d 469, 476 (5th Cir. 1998) ("[*Cervantes-Pacheco*] imposed restrictions on the admissibility of [paid] testimony, including a requirement that the district court instruct the jury specifically on the suspect credibility of a compensated witness."); *United States v. Kaufman*, 858 F.2d 994, 1005 (5th Cir. 1988) ("The trial judge in the instant case instructed the jury that [the witness] was being paid by the government as we required in *Cervantes-Pacheco*."); *United States v. Goff*, 847 F.2d 149, 161 (5th Cir. 1988) ("[T]he trial court must give the jury careful instructions pointing out the suspect credibility of a fact witness who has been or expects to be compensated for his testimony."); *United States v. Rizk*, 833 F.2d 523, 525 (5th Cir. 1987) ("The testimony of an informant to whom the government has promised a fee is admissible if . . . the trial court, in instructing the jury, has pointed out the suspect credibility of a fact witness who has been compensated for his testimony.").

[17] 373 U.S. 83 (1963).

7

upon request violates due process where the evidence is material."[18] *Brady* "requires that the prosecution disclose to the defense both exculpatory evidence and evidence that would be useful for impeachment."[19] To establish a *Brady* violation, Villafranca "must show that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material."[20] In this case, the prosecution did not suppress any evidence. At trial, the testimony revealed only that Salas was likely to receive a large bonus, but that the amount of the bonus had not yet been determined. All of this information, except for the ballpark amount of the bonus, appeared in the plain language of Salas's contract, which was disclosed before trial. At trial, the defense was able to fully explore the meaning of the contract and the likely bonus at trial.[21] There was no *Brady* violation.

Villafranca also argues that the district court violated the safeguards put in place by *Cervantes-Pacheco* by failing to "give a careful instruction to the jury pointing out the suspect credibility of a fact witness who has been compensated for his

---

[18] *Id.* at 87.

[19] *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1995).

[20] *Id.*

[21] *See id.* (holding that the evidence is suppressed only if it is not revealed at or before trial).

testimony."[22] Villafranca is correct. Salas was a paid informant,[23] and therefore under *Cervantes-Pacheco* the district court did not have discretion to omit an instruction cautioning the jury about his credibility. The district court gave only a general instruction about weighing the credibility of each witness based on, among other things, whether the witness has an incentive to lie. This is not the sort of specific instruction described by *Cervantes-Pacheco*.[24] Failure to give specific instructions courts reversal.

The contract between Salas and the government exemplifies the unjust incentives that an agreement to pay an informant can create. The contract created the danger of perjury in three ways: First, it deferred payment of a bonus to Salas until after he testified, thereby creating the possibility of withholding or reducing payment if his testimony is unfavorable or insufficient to obtain a guilty verdict. Second, the vague criteria for determining the amount of

---

[22] *Cervantes-Pacheco*, 826 F.2d at 316.

[23] Although the government argues that Salas was not a paid informant within the meaning of *Cervantes-Pacheco*, Salas's agreement with the government is almost identical to the agreement the government struck with the informant in *Cervantes-Pacheco*. In *Cervantes-Pacheco*, the witness's "compensation from the government included a per diem, expenses, and a payment at the conclusion of the case based on the government's evaluation of his overall performance." *See id.* at 311. The government concedes that the size of his bonus may depend on the outcome of the prosecution. On cross-examination, FBI Agent Oscar Rodriguez testified that Salas may be given a bonus of more than $100,000. Rodriguez admitted that one factor that could affect the size of Salas's bonus was the outcome of the prosecution.

[24] This circuit provides a pattern jury instruction for testimony of an alleged accomplice, paid informant, immunized witness. *See Fifth Circuit Pattern Jury Instructions: Criminal* § 1.14 (1997). Villafranca requested a somewhat different instruction.

the bonus allowed the government to consider the outcome of the trial as a factor in determining Salas's bonus. Third, the sheer size of the possible bonus—upwards of $100,000—created an incentive for the paid witness to ensure that he does nothing to jeopardize the government's willingness to deliver the bonus. Ideally, contracts with paid informants would not defer so much of the remuneration until after the witness testifies for precisely these reasons. And while Salas's contract may have protected the government's interest in a cooperative witness, the danger of embellished testimony generated by dangling such a plump carrot before a critical witness is why this court requires rigorous safeguards to protect the integrity and accuracy of the jury's fact-finding.

One of those safeguards, a special instruction to the jury, was not employed in this case. Nonetheless, on the record in this case, we find this error harmless. We will not conclude that an error is harmless unless we determine that it is harmless beyond a reasonable doubt.[25] It is harmless only because Salas's testimony was so extensively and thoroughly corroborated by other witnesses' testimony, documentary evidence, and tape recordings of the conversations Salas had with Villafranca. The government introduced over seventy tape recordings containing conversations among Salas, Villafranca, and the other conspirators. These

---

[25] *See* Fed. R. Crim. P. 52(a); *Chapman v. California*, 386 U.S. 18, 24 (1968).

recordings included statements by Villafranca himself inquiring about bribe money and admonishing Salas to keep his activities secret. The government presented corroborating testimony describing how federal agents monitored the taping of Salas's conversations with Villafranca to ensure that Salas could not tamper with the tape recorder. Ruben Garcia, as well as a co-conspirator who made a payment to get his case fixed, testified for the government. The extent of the corroboration of Salas's testimony convinces us beyond a reasonable doubt that the failure to give a special jury instruction was harmless.[26]

B

Villafranca also claims that the testimony of Garcia should not have been admitted because he had entered into a plea bargain with the government. This contention has no merit. The district court gave the jury a specific charge reminding the jury that Garcia had pleaded guilty pursuant to an agreement with the government that could give him a reduced sentence. The testimony of a plea-bargaining defendant is admissible if the jury is properly instructed.[27]

---

[26] At oral argument, counsel for Villafranca could not identify any aspect of Salas's testimony, except Salas's statements about his personal background, that was not corroborated.

[27] *See Cervantes-Pacheco*, 826 F.3d at 316; *United States v. Haese*, 162 F.3d 359, 366-68 (5th Cir. 1998).

11

Villafranca also challenges his sentence. He first argues that the PSR incorrectly applied U.S.S.G. section 2C1.1, the Guideline for bribery and extortion, rather than section 2X1.1, which covers attempts, conspiracies, and solicitation, when the Guideline for the underlying substantive offense does not address them.

The district court did err in applying section 2C1.1 rather than section 2X1.1. Section 2C1.1 does not specifically include conspiracy to extort, and thus section 2X1.1 applies.[28] In Villafranca's case, however, this distinction makes no difference, and the error is harmless. As section 2X1.1(a) states, the offense level for conspiracy is the same as the base offense level of the substantive offense, "plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty."[29] Thus, there is no difference between the Guidelines calculation for conspiracy to extort and extortion when the evidence accepted by the sentencing court shows that the conspiracy's objectives were actually completed.[30] In this case,

---

[28] *See* U.S.S.G. § 2X1.1(c)(1) (2000) ("When an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section."); U.S.S.G. § 2X1.1 Application note 1 (listing offense Guidelines that expressly include conspiracy, but not listing § 2C1.1).

[29] U.S.S.G. § 2X1.1(a) (2000).

[30] *See* U.S.S.G. § 2X1.1 Application note 2 (2000) ("[T]he only specific offense characteristics from the guideline for the substantive offense that apply are those that are determined to have been specifically intended or actually occurred."); *cf.* U.S.S.G. § 2X1.1(b)(2) ("If a conspiracy, decrease by 3 levels,

the district court found that the bribes alleged by the government were in fact completed.[31]  Thus, all of the adjustments applied by the district court were proper.

Villafranca's second argument assigns error to the upward adjustment of eight levels because the offense involved a payment to influence an official holding a high-level decisionmaking position.[32]  He argues that since he was the official in the decisionmaking position, he could not have paid money to himself. This argument has no merit.  The Guideline does not require that the defendant have paid the money to the decisionmaking official; instead, it merely requires that the offense involve a payment to such an official.  Villafranca's culpability is no less because he received, rather than made, the corrupt payment.

Finally, Villafranca argues that the upward adjustment of four levels for having the role of organizer or leader was error.  He argues that the charge against Villafranca precludes the participation of more than five individuals, which the Sentencing Guidelines require in order to find that the defendant was an

---

unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense.").

[31] The fact that Villafranca was convicted of conspiracy to violate the Hobbs Act, but was acquitted for the separate counts of substantive violations of (or attempt to violate) the Hobbs Act, does not preclude the sentencing court from finding that all of the acts alleged in the indictment occurred. *See United States v. Branch*, 91 F.3d 699, 742-43 (5th Cir. 1996).

[32] *See* U.S.S.G. § 2C1.1(b)(2)(B) (2000) ("If the offense involved a payment for the purpose of influencing an elected official or any official holding a high-level decision-making or sensitive position, increase by 8 levels.").

13

organizer or leader.[33]  This is incorrect.  The indictment and the district court's findings at the sentencing hearing both describe a conspiracy involving not only Villafranca and Garcia, but at least twelve defendants with whom Villafranca and Garcia agreed to fix cases.

                                    V

     The evidence was sufficient to establish jurisdiction and to sustain Villafranca's conviction under the Hobbs Act.  The district court erred in failing to give the special cautionary instruction for paid informant testimony required by *Cervantes-Pacheco*.  However, the record establishes that this error was harmless beyond a reasonable doubt.  And although the court erred in applying section 2C1.1 of the Sentencing Guidelines instead of section 2X1.1, this error was harmless.  The conviction and sentence are AFFIRMED.

---

[33] *See* U.S.S.G. § 3B1.1(a) (2000).

14