United States Court of Appeals

Fifth Circuit

**F I L E D**

**August 15, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

No. 02-41248

UNITED STATES OF AMERICA

Plaintiff - Appellee

VERSUS

RICARDO CISNEROS

Defendant - Appellant

Appeal from the United States District Court
For the Southern District of Texas, Laredo
L-01-CR-726-ALL

Before DAVIS, SMITH and DUHE', Circuit Judges.

PER CURIAM:[*]

Cisneros, a bail bondsman, challenges his conviction and sentence under the Hobbs Act for conspiring and acting with Juan Alfonso Rodriguez, the Assistant Chief Investigator for the Webb County District Attorney, to extort money from Cisernos' clients to fix criminal cases pending in Webb County Texas. We find no error

---

[*]Pursuant to 5ᵀᴴ CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

and affirm.

I.

A.

The prosecution against Cisneros stems from an investigation into public corruption in the DA's Office in Webb County, Texas. This court has issued two published opinions in cases arising from this investigation. See United States v. Rubio, 321 F.3d 517 (5th Cir. 2003); United States v. Villafranca, 260 F.3d 374 (5th Cir. 2001).

Between 1994 and 1998, Cisneros and Rodriguez worked together to secure favorable dispositions of cases against several of Cisneros' clients in exchange for money. Rodriguez testified that, in his position as the assistant chief investigator of the DA's office, he was authorized to reduce charges in misdemeanor cases. Cisneros approached Rodriguez about fixing theft, drug and DWI cases, usually by reducing the charged offenses to lesser charges. In return for fixing cases for Cisneros' clients, Rodriguez received varying amounts of cash from Cisneros ranging from $150 to $200 for thefts and $300 for DWI's.

At trial, the arresting officers, Cisneros' clients who were arrested for the underlying offenses and Rodriguez testified against Cisneros. Through this testimony the Government showed that Cisneros and Rodriguez fixed DWI cases filed against Joe

Alaniz, Jose Molina, Jose Acevedo, and Cesar Adams in return for money. The Government also showed that Cisneros and Rodriguez fixed a theft case for Laura Carrillo-Garcia in return for money.

To establish the required nexus to interstate commerce, the Government presented the expert testimony of Dr. Robert Voas, an expert on alcohol and highway safety. Dr. Voas testified at length regarding the effect of alcohol related accidents on highway safety. Dr. Voas testified that alcohol is the most important factor in fatal automobile accidents which cause congestion of highways, delaying the flow of commerce. According to Dr. Voas, the enforcement of DWI laws acts as a deterrent to drunk driving; however, the failure to enforce these laws reduces their effectiveness.

B.

The jury convicted Cisneros on one conspiracy count(Count 1) and one substantive count(Count 2) of violating the Hobbs Act. Count 1 charged Cisneros with conspiring with Rodriguez to extort money to fix cases pending in Webb County. Count 2 charged Cisneros and Rodriguez with extorting money from Cesar Adams who was charged with DWI. The district court sentenced Cisneros to concurrent sentences of forty-one months along with a fine, a term of supervised release and a special assessment. This appeal followed.

3

II.

A.

Cisneros argues first that as applied to his case, the Hobbs Act is unconstitutional because Congress exceeded its power under the Commerce Clause.

This argument is foreclosed by this court's decisions in Rubio and Villafranca. As noted above, the charges in Rubio arose out of the same investigation of the Webb county DA's office. Like Cisneros, defendants, Rubio and Castaneda, were also charged with extortion in violation of the Hobbs act and conspiracy to commit extortion in violation of the Hobbs Act. Some of the charges against Rubio and Castaneda stemmed from taking money to fix DWI offenses. Like Cisneros, Rubio and Castaneda argued that fixing DWI cases would not permit a fact finder to find the required nexus to interstate commerce. In addressing this argument, we stated the following in Rubio:

> While the vast majority of the counts against Rubio and Castaneda are controlled by Villafranca, others involve the extortion of money to provide favorable dispositions of DWI offenses. In United States v. Wright, 797 F.2d 245 (5th Cir. 1986), this court found that the requisite nexus to commerce existed where extortion charges under the Hobbs Act involved failure to prosecute drunk drivers. In United States v. Wright, the court relied on expert testimony that non-enforcement of DWI laws results in more alcohol related accidents and less highway safety to support its conclusion that the extortion affected interstate commerce.
> In this case, as in Wright, the government's expert testified that drinking and driving is likely the major factor in highway accidents. He stated that the high risks can be reduced by treating the drinking

4

driver or by suspending or revoking driving privileges but that failure to prosecute drunk drivers encourages more drunk driving and jeopardizes highway safety.

Though United States v. Wright was issued prior to the Supreme Court's opinions in Lopez, Jones, and Morrison, we agree with the Eleventh Circuit's post-Lopez decision in United States v. Castleberry, 116 F.3d 1384 (11th Cir. 1997), that there is a sufficient nexus to commerce to permit jurisdiction under the Hobbs Act.

Based on the forgoing, we are satisfied that as applied to each of the counts against Rubio and Castaneda the Hobbs Act does not exceed Congress's power to regulate commerce.

The facts of this case are indistinguishable from Rubio. The Government relied on the same expert witness, Dr. Voas, who gave essentially the same testimony as he did in Rubio. Thus, the counts with which Cisneros was charged suffer no constitutional infirmity on this basis. Accordingly, Cisneros' argument on this point is controlled by Rubio.

Cisneros also argues that Count I must be reversed because one of the objects of the conspiracy involved an arrest for theft. But the government's proof that Cisneros conspired to fix DWI cases is sufficient to support the conviction on this count. It is therefore unnecessary for us to consider whether fixing retail theft cases can also satisfy the Hobbs Act interstate commerce element. The jury obviously accepted the government's theory that a nexus existed between fixing DWI cases and interstate commerce because the jury also returned a guilty verdict on the substantive Hobbs Act count(Count 2) charging defendant with fixing a DWI case.

5

B.

Cisneros argues next that the trial court erred in refusing the following requested instruction:

> To convict defendant, however, you must find and believe beyond a reasonable doubt that each of the wrongful acts alleged by the Government, by itself, without considering the aggregate effect of such alleged violations of law, had a substantial effect on interstate commerce. To convict, you must be satisfied beyond a reasonable doubt that the effect on interstate commerce of such alleged offense was not remote or attenuated, but was direct and substantial.

The district court rejected this instruction and instructed the jury as follows:

> Commerce includes travel, trade, transportation, and communications. "Interstate commerce" means commerce between one state of the United States and another. It is not necessary for the government to prove that a defendant's conduct in a particular count substantially affected interstate commerce. Instead, it is sufficient for the evidence that the conduct had only a minimal effect, so long as the conduct described in a particular count is of a type which, if repeated many times over, would have a substantial effect on interstate commerce.

We have approved the standard set out in the district court's instruction on a number of occasions. See United States v. Jennings, 195 F.3d 795, 800 (5th Cir. 1999); United States v. Robinson, 119 F.3d 1205 (5th Cir. 1997), *cert. denied,* 522 U.S. 1139, 118 S.Ct. 1104, 140 L.Ed.2d 158 (1998); United States v. Miles, 122 F.3d 235, 241 (5th Cir. 1997). Cisneros' argument is therefore foreclosed by circuit precedent.

C.

6

Cisneros argues next that the government failed to produce sufficient evidence to establish an essential element of a Hobbs Act case, namely that a public official was paid for the favorable disposition of a criminal case. In reviewing a sufficiency claim, the court "must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Williams, 264 F.3d 561, 576 (5th Cir. 2001)(citations omitted).

Under the Hobbs Act, one of the elements of extortion is that property be obtained from another "under the color of official right."[1] 18 U.S.C. §1951 (b)(2). In order to prove that the property was wrongfully obtained under the "color of official right," the Government must prove that a public official obtained payment to which he was not entitled. United States v. Stephens, 964 F.2d 424, 429 (5th Cir. 1992). Thus, in order to convict Cisneros, the Government had to show that a public

---

[1] The Hobbs Act reads in pertinent part as follows:
(a) whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery, extortion or attempt or conspires so to do, . . . shall be fined under this title or imprisoned not more than twenty years, or both.
(b) As used in this section --
   (2) The term "extortion" means the obtaining of property from another, with his consent, . . . *under the color of official right.*

official was paid part of the proceeds taken to fix the arrestee's case.

With regard to Count II, Cisneros argues that only he and the arrestee, Cesar Adams, were involved in fixing Adams' case. There is no contention by the Government that Cisneros is a public official.

The trial record does not support Cisneros' argument. The record reveals that after he was arrested, Adams paid Cisneros $800 to have his case fixed. Three weeks later, Cisneros told Adams that "everything was taken care of." Adams' DWI was reduced to a charge of failing to stay in the proper lane, and the case was disposed of through the payment of a $150 fine. Rodriguez, who is unquestionably a public official, testified during Cisneros' trial that he fixed Adams case and was paid $300 to do so. Rodriguez's testimony, along with this corroborating evidence, demonstrates that this element of the offense was met. Thus, Cisneros' sufficiency argument targeting this element of the offense has no merit.

Cisneros also contends that the Government was required to prove that the extortion had the effect of depleting the assets of the arrestee. Cisneros cites United States v. Collins, 40 F.3d 95 (5th Cir. 1994) in support of this argument. However, a careful reading of Collins shows that the theory of asset depletion is only one means of showing the requisite connection to interstate commerce. It is not, as Cisneros contends, a

required element of proof in every Hobbs Act case.  The depletion of assets theory is generally applied to cases involving businesses where it can be inferred that the depletion of the business's assets obstructs or delays the business's operations and thereby indirectly affects interstate commerce.  Id. at 99-100.  On the other hand, as discussed above, extortion may have a direct effect on commerce where it involves interstate travelers or businesses engaged in interstate commerce.  Id. at 99, n. 15. The government relied on this latter theory and produced sufficient evidence to establish the nexus with interstate commerce.

D.

Finally Cisneros argues that the district court erred in increasing the base offense level by eight levels based on its conclusion that Cisneros' payment to Rodriquez "..."involved a payment for the purpose of influencing...any official holding a high level decision making or sensitive position. United States Sentencing Guidelines Manual, Section 2C1.1(b)(2)(B).

Rodriguez was the Assistant Chief Investigator in the DA's Office.  In this capacity, he was in charge of most administrative matters in the office.  He was also responsible for the supervision of approximately eight other investigators and office clerks and oversaw most of the office budgetary matters.  In addition to Rodriguez's administrative duties, he conducted and supervised investigations.  Rodriguez testified

9

that in this capacity he was authorized to reduce charges (including DWI's) of offenders to lesser offenses. The district court's finding that Rodriguez was in a "high-level decision making or sensitive position" was not clear error.[2]

CONCLUSION

Because the district court correctly rejected all of Cisernos' arguments, we affirm his conviction and sentence.

AFFIRMED.

---

[2]We decline to consider Cisernos' argument raised for the first time in a supplemental brief that the district court plainly erred in assessing a two level enhancement for obstruction of justice.