WIENER, Circuit Judge,
concurring in part and dissenting in part:
I concur in the majority’s opinion in all respects, except for Section III.A.(3) — the section that reverses all but one of Mann’s Hobbs Act convictions. As to those reversals, I respectfully dissent because I disagree with (1) the majority’s willingness to characterize Mann’s challenge as one of insufficient evidence of interstate nexus to support the convictions on Counts 2, 4, and 7-9, and (2) the majority’s reliance on United, States v. Box[1] to conclude that there was insufficient evidence of an effect on interstate commerce.[2]
As the majority notes, the defendants in Box were charged with and convicted for numerous acts of extortion against individuals at a rest area abutting a U.S. Highway. The Box panel affirmed some convictions and reversed others, based on whether the individual victim in each count was traveling interstate or purely intrastate at the time of the defendants’ extortion. Specifically, three convictions were affirmed, one because the victim was traveling from Texas to Oklahoma, another because the victim was traveling from Texas to Colorado and New Mexico, and the third because the victim was traveling from Colorado to Oklahoma. Three other *500 convictions were reversed, however, because each victim was traveling from one location in Texas to another. In like manner, the panel majority today reverses all but one of Mann’s Hobbs Act convictions (the one in which the victim was traveling from Mexico to Georgia), because the government failed to introduce evidence that the victims in the remaining counts were traveling interstate, only that they were traveling on a U.S. Highway.
If Box were still good law, I could not fault my colleagues for that result. But I see reliance on Box as no longer justifiable. Ever since the Supreme Court handed down United States v. Lopez,[3] we have applied its “aggregation doctrine”— and rightly so — when determining whether an act of extortion under a Hobbs Act charge has a substantial effect on interstate commerce.[4] I read Box as an outlier for its failure to acknowledge or apply this aggregation doctrine in determining whether the extortions at issue there had a substantial effect on interstate commerce. (This is not meant as a criticism of the panel that rendered Box, as it was decided several months before the Supreme Court handed down Lopez with its express embrace of applying the aggregation principle in Commerce Clause cases.) Today’s panel majority errs in relying on Box, a single pr e-Lopez, pre-aggregation case.[5] Instead, we should, as mandated by Lopez and our own post -Lopez caselaw, analyze the facts of the subject case in light of a Commerce Clause challenge by determining whether Mann’s extortionate acts, if repeated in the aggregate across the nation, would have a substantial effect on interstate commerce. When that is done, I find the conclusion inescapable that, if small town police departments and rural sheriff offices all across the country were to take U.S. Highways hostage with extortionate schemes and acts like Mann’s, there absolutely would be a substantial effect on interstate commerce. We do not need some Daubert-qualified expert to testify in support of the government’s position or to underpin the obvious answer that interstate commerce would be sub *501 stantially affected by such an aggregation. To me, this conclusion is wholly unavoidable: I would affirm all of Mann’s Hobbs Act convictions after applying the methodology mandated by Lopez.
In closing, I note in the alternative that my position is also consistent with the Supreme Court’s acknowledgment in Lopez that Congress may regulate the use of the channels of interstate commerce by keeping them free from immoral and injurious uses.[6] It cannot be debated that U.S. Highway 59, which has spanned this country’s midsection from Canada to Mexico since 1934, is a channel of interstate commerce. This is an independent reason why I cannot see how the majority can conclude that Congress is without authority to punish Mann’s “highway robbery”— an obvious malignant use of our interstate highway system.
For these reasons, I must respectfully dissent from the majority’s reversal of Counts 2, 4, and 7-9.

. 50 F.3d 345 (5th Cir. 1995).

. To me, the panel majority erroneously characterizes Mann’s challenge as one to the insufficiency of the evidence. Actually, Mann’s brief makes pellucid that he makes only a unconstitutional-as-applied challenge to his Hobbs Act convictions. Moreover, even if Mann had couched his challenge in evidentia-ry terms, it still would be properly cognizable as a constitutional challenge. Mann does not contend that the government failed to offer evidence of an effect on interstate commerce; only that the evidence offered by the government was constitutionally insufficient, as applied, to support a Hobbs Act conviction, because it did not demonstrate an adequate interstate nexus.
The panel majority has essentially conceded this point, acknowledging that “[standing alone, these perfunctory arguments would be insufficient to preserve the issue for review.”
Instead of stopping there as it should have, the panel majority goes on in the next three sentences to conclude that, because Mann has adequately raised a completely separate, unconstitutional-as-applied challenge to his convictions (which I agree he has), he has also adequately raised an insufficiency-of-the-evidence argument (which I conclude he has not). I am puzzled by the majority's legerdemain here. As far as I know, this court has always maintained a strong policy against "lawyering” a party’s case for him. Part and parcel of this policy is that a litigant who fails to raise or brief an issue is deemed to have waived or abandoned it. Thus, I am unaware of any principle of this court that blesses a panel’s sua sponte cobbling together bits and pieces of a party's disparate arguments to deem a litigant to have conjured up an argument he never made. It is the party’s task, and the party’s task alone, to preserve his issues and arguments by sufficiently raising and briefing them.

. 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

. United States v. Jennings, 195 F.3d 795, 799-801 (5th Cir.1999); United States v. Robinson, 119 F.3d 1205, 1214-15 (5th Cir.1997).

. The panel majority erroneously invokes United States v. Villafranca to justify reliance on Box as the law of this circuit after Lopez. 260 F.3d 374, 378 n. 12 (5th Cir.2001). In Villafranca, we stated, ”[a]lthough Box predates the watershed Supreme Court decision in United States v. Lopez, this circuit has reaffirmed the expansive application of the government’s commerce power in the Hobbs Act context and related criminal law contexts.” Id. at 378 n. 12 (internal citations omitted and emphasis added). The majority mistakenly takes this statement to mean that Box is still good law. The panel majority, however, has missed or disregarded the context of this statement.
First, the Villafranca court's statement was only directed to Box’s treatment of the defendants' Hobbs Act conspiracy convictions. It had no bearing on Box’s handling of the defendants’ substantive Hobbs Act convictions. Here, only the disposition of Mann’s substantive Hobbs Act convictions are in dispute. Thus, Villafranca's discussion of Box is inap-posite.
Even more significantly, the Villafranca statement acknowledges that, both pre- and post-Lopez, this court has applied an expansive view of the government's commerce power. In Box, three substantive Hobbs Act convictions were reversed as being beyond the government's commerce power. The panel majority cannot contend that the Villafranca statement acknowledging this court’s expansive treatment of the government’s commerce power reaffirms the post -Lopez viability of a case that narrowed the government's commerce power. Moreover, the Villafranca statement acknowledging our expansive application of the government’s commerce power is completely averse to what the panel majority does today — narrow the government's commerce power.

. 514 U.S. at 558, 115 S.Ct. 1624.