**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 12-50846

United States Court of Appeals
Fifth Circuit

**FILED**

January 15, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

versus

GRALYN LEON WHITE

Defendant–Appellant

———————————————————

No. 12-50847

———————————————————

UNITED STATES OF AMERICA,

Plaintiff–Appellee

versus

GRALYN LEON WHITE; DAVIIAN DWANE ROBERTS

Defendants–Appellants

———————————————————

Appeals from the United States District Court
for the Western District of Texas
USDC No. 7:08-CR-213-1
USDC No. 7:11-CR-276-1

———————————————————

No. 12-50846
No. 12-50847

Before STEWART, Chief Judge, JOLLY and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:*

On the pretense of wanting to buy drugs, Gralyn White and Daviian Roberts entered the house of a drug dealer, Monique Miller (the "Miller robbery"), and robbed her of drugs and money. A few days later, White and a few others surprised another individual, whom they also believed to deal drugs, at his house and robbed him of his money and possibly drugs (the "Lutsi robbery"). A jury convicted White and Roberts of the robbery of Miller, under the Hobbs Act,[1] and of aiding and abetting the use of firearms in the commission of that offense.[2] The jury convicted White (but not Roberts), under the Hobbs Act, of the Lutsi robbery and of aiding and abetting the use of firearms. The sentences included restitution for both robberies.

In this consolidated appeal, White and Roberts challenge their Hobbs Act convictions for insufficiency of evidence of an interstate nexus. White additionally challenges the enhancement for his "second and subsequent conviction" for the Lutsi robbery, though he concedes the issue is foreclosed by Supreme Court precedent. Roberts challenges the order that he pay restitution for the Lutsi robbery, for which he was never convicted.

Although this circuit has never upheld a Hobbs Act conviction for a single robbery of a single drug dealer, the best reading of our caselaw is that an interstate nexus can been met under such circumstances, so we affirm the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] 18 U.S.C. § 1951.

[2] 18 U.S.C. § 924(c).

2

No. 12-50846
No. 12-50847

convictions. Because the parties did not brief the relevant caselaw from other circuits, we express no opinion as to whether this circuit should require that the government prove that the drugs must have originated outside the state. We also affirm White's sentence and Roberts's restitution order.

I.

A.

This court reviews challenges to the sufficiency of the evidence *de novo*, *United States v. Harris*, 420 F.3d 467, 470 (5th Cir. 2005), "view[ing] the evidence in the light most favorable to the verdict, inquiring only whether a rational juror could have found each element of the crime proven beyond a reasonable doubt," *United States v. Villafranca*, 260 F.3d 374, 377 (5th Cir. 2001) (internal quotation marks and citation omitted). "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *United States v. Rashad*, 687 F.3d 637, 642 (5th Cir. 2012).

In support of its assertion that the robberies affected interstate commerce, the government points to testimony by DEA Agent Dante Sorianello, who was certified as an expert in cocaine and hydroponic marihuana trafficking. Sorianello said that because the coca plant, from which cocaine is produced, is not grown in the United States, cocaine found here would necessarily have been smuggled into the United States. Sorianello further testified that hydroponic marihuana sold in the local market was generally grown in California or Colorado. Although he conceded that hydroponic marihuana could be grown locally, the seeds likely would be from outside Texas. The government also urges that there was an effect on interstate commerce because had Miller or Lutsi tried to replace the stolen drugs, those drugs would have had to come

from outside Texas.

White contends that Sorianello provided no testimony about whether his conduct affected interstate commerce. Roberts, meanwhile, maintains that the Miller robbery—the only one of which he was convicted—amounts to an act against an individual, not a business. Roberts claims that the theft of cash from Miller did not establish the requisite connection to interstate commerce because Miller's testimony did not specify that the cash would have been used to purchase additional drugs for sale; because Miller's involvement with cocaine trafficking was small-scale and was not a continuing business; because the government did not present sufficient evidence showing Miller's marihuana came from outside Texas; and because there was insufficient evidence to find that marihuana was stolen from Miller.

### B.

The question is whether the evidence is sufficient for a rational jury to find that the defendants' acts affected interstate commerce. Criminal acts against an individual can meet the interstate commerce nexus only if "(1) the acts deplete the assets of an individual who is directly and customarily engaged in interstate commerce; (2) the acts cause or create the likelihood that the individual will deplete the assets of an entity engaged in interstate commerce; or (3) the number of individuals victimized or the sum at stake is so large that there will be some cumulative effect on interstate commerce." *United States v. Collins*, 40 F.3d 95, 100 (5th Cir. 1994) (internal quotation marks omitted).

Our caselaw, however, treats illegal drugs somewhat differently and suggests that the required interstate nexus can be established by a single robbery of a single drug dealer. In this circuit's first case upholding a Hobbs Act conviction involving drug dealers, two former police officers had been convicted

4

of extorting money from local dealers:

> The Fifth Circuit has adopted the "depletion of assets" test. Under this theory, taking money away from a business engaged in interstate commerce obstructs, delays, or affects commerce, as required for a Hobbs Act violation. The evidence at trial showed that the defendants took money away from Green's and Frazier's drug businesses. This court has previously held that "drug trafficking affects interstate commerce." This holding was based on a detailed Congressional finding to that effect. The extortion at issue here, which depleted funds otherwise available for drug trafficking, therefore impeded interstate commerce sufficiently to implicate the Hobbs Act.

*United States v. Davenport*, No. 93-1216, 36 F.3d 89 (table), 1994 WL 523653, at *11 (5th Cir. Sept. 6, 1994) (unpublished) (internal citations omitted).

Then in *United States v. Villafranca*, 260 F.3d 374 (5th Cir. 2001), a prosecutor was convicted under the Hobbs Act for "fixing" drug cases for money:

> Most of the defendants that paid Villafranca and Garcia to fix their cases were caught while traveling to and from Mexico, and occasionally to and from other states. Many of the defendants were engaged in the shipment of large quantities of drugs. Thus, the extortion by Villafranca involved delaying or expediting the movement of individuals across state and international lines and affected commerce in drugs. The requirement of a nexus to interstate commerce is met in this case.

*Id.* at 378 (footnotes omitted). "[I]nterfering with or facilitating narcotics trafficking [is] sufficient to create an effect on interstate commerce, since drugs are traded on an interstate market." *Id.*

The case of *United States v. Rubio*, 321 F.3d 517 (5th Cir. 2003), similarly involved convictions under the Hobbs Act for "fixing" drug cases. In *United States v. Partida*, 385 F.3d 546, 561 (5th Cir. 2004), the court again held that the interstate nexus is met if the defendants "depleted funds that would otherwise have been available for drug trafficking." There, two police officers were

No. 12-50846
No. 12-50847

convicted under the Hobbs Act for receiving money in exchange for protecting drug shipments.

None of these cases directly requires that we affirm the convictions here. The scope of the criminal activities in each of them was much broader, involving police officers who extorted money from multiple dealers in exchange for protection or prosecutors who would extort money in exchange for fixing drug cases.[3]  Here, on the other hand, we have robberies of individual drug dealers for the sole purpose that the perpetrators needed money.[4]  Such cases are usually well suited for prosecution by the states.[5]

After reviewing the holdings and reasoning in *Davenport*, *Villafranca*, and *Partida*, however, we cannot say that the instant petty robberies lack an interstate nexus.  Both "depleted funds that would otherwise have been available for drug trafficking," *Partida*, 385 F.3d at 561, and "[t]he extortion at issue here, which depleted funds otherwise available for drug trafficking, therefore impeded interstate commerce sufficiently to implicate the Hobbs Act," *Davenport*, 1994 WL 523653, at *11.  Finally, White and Roberts "interfere[d] with . . . narcotics trafficking . . . ."  *Villafranca*, 260 F.3d at 378.

---

[3] Similarly, in *United States v. Herrera*, 466 F. App'x 409 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 833, *and cert. denied*, 133 S. Ct. 834, *and cert. denied*, 133 S. Ct. 834, *and cert. denied*, 133 S. Ct. 834, *and cert. denied*, 133 S. Ct. 835 (2013), members of a prison gang were convicted under the Hobbs Act for extorting "quotas" from several drugs dealers in a wide-ranging conspiracy that included murder and violence.  The conspiracy involved the "coordination between free [gang] members and prisoners incarcerated in different states, and between individuals on both sides of the United States–Mexico border."  *Id.* at 418.

[4] As one participant in the robberies explained not so eloquently, "Actually, one day we just didn't have no money.  We was broke.  Bad timing, you know.  Woke up, didn't have no money, needed—family was in need, couldn't take it.  We got—got together and, you know, put a plan up, and we robbed somebody."

[5] "[T]he Hobbs Act was intended to reach only certain activities that hamper interstate business, reflecting the long-recognized principle that the states are best positioned and equipped to enforce the general criminal laws."  *Collins*, 40 F.3d at 101.

No. 12-50846
No. 12-50847

Moreover, the first prong of the *Collins* test—"the acts deplete the assets of an individual who is directly and customarily engaged in interstate commerce"—could apply here. The dealers were targeted *because* they were drug dealers or believed to be so; that is, White and Roberts expected them to have not only cash but also drugs that they could potentially resell. Thus, the victims were directly and customarily engaged in, or believed to be engaged in, interstate commerce.[6]

Our sister circuits have upheld Hobbs Act convictions for robberies of individual drug dealers. Although at least two other circuits require proof that the drugs originated out-of-state, that issue was not briefed, and we express no opinion as to the necessity of proving out-of-state origination in future cases in which this issue might be properly raised.[7]

The evidence showed that Miller and Lutsi were or were believed to be drug dealers and that White aided and abetted the robberies of them, and Robert aided abetted the robbery of Miller. The victims were individuals customarily engaged in, or believed to be engaged in, interstate commerce, and that they were targeted for that reason.[8] The verdict is therefore supported by sufficient evidence.

---

[6] The Hobbs Act has been applied to the interstate drug market, and it applies generally to illegal businesses. *See United States v. McFarland*, 311 F.3d 376, 401 (5th Cir. 2002) (per curiam) (en banc) (affirmance by equally divided court); *United States v. Box*, 50 F.3d 345, 353 (5th Cir. 1995).

[7] *See United States v. Walker*, 657 F.3d 160, 182 (3d Cir. 2011), which collects cases from the First, Second, Fourth, Sixth, Seventh, and Eighth Circuits for the proposition that the robbery of an individual drug dealer meets the interstate nexus *at least where* the drugs originated outside the state. *See United States v. Needham*, 604 F.3d 673 (2d Cir. 2010), and *United States v. Peterson*, 236 F.3d 848 (7th Cir. 2001), for the proposition that the government must prove that the drugs originated outside the state or were sold to out-of-state customers.

[8] Both participants and victims testified, and their testimony suggests not only that drugs were stolen at the Miller robbery, but moreover that the perpetrators entered Miller's

No. 12-50846
No. 12-50847

## II.

White contends that the district court erred in applying the sentencing enhancement of 18 U.S.C. § 924(c), based on a second or subsequent conviction, because the second offense used to apply the enhancement was contained in the same indictment as was the predicate offense. White concedes that the issue is foreclosed by *Deal v. United States*, 508 U.S. 129, 132–37 (1993), holding that the second of two offenses charged in the same indictment triggers the mandatory-minimum-sentencing provision. In *United States v. Lopez-Urbina*, 434 F.3d 750, 761 (5th Cir. 2005), this court held that *Deal* is still binding precedent.

## III.

Roberts challenges the imposition of restitution for the Lutsi robbery, for which he was not convicted. Under the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, a defendant "is only responsible for paying restitution for the conduct underlying the offense for which he was convicted." *United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005). Because Roberts did not object, however, we review for plain error. He must therefore show (1) an error (2) that is clear or obvious and (3) affects his substantial rights and (4) that the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* Although the district court erred in assessing the restitution for the Lutsi robbery, this is not one of those rare proceedings in which the unpreserved error seriously affected the fairness, integrity, or public

---

house on pretense of conducting a drug sale. The testimony also suggests that the perpetrators knew Lutsi sold drugs and that they may have been targeting him for that reason.

No. 12-50846
No. 12-50847

reputation of judicial proceedings.[9]

The judgments appealed from are AFFIRMED.

---

[9] The court in *Inman*, 411 F.3d at 595, and in *United States v. Hickman*, 331 F.3d 439 (5th Cir. 2003), found plain error where MVRA restitution was ordered for counts of which the defendants were not convicted. The court did not, however, consider prong four of the plain-error test. Similarly, in *United States v. Austin*, 479 F.3d 363 (5th Cir. 2007), the court did conclude that prong four was met, but it did so by mere reliance on *Inman* and *Hickman*—which never addressed prong four—for that conclusion. In this case, we exercise the discretion given to each panel to decline to grant plain-error relief.