# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 19, 2015

Lyle W. Cayce
Clerk

No. 14-20547
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

CRYSTAL WASHINGTON, also known as Crystal Bureau,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CR-660-1

Before REAVLEY, SMITH, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Former Texas Department of Criminal Justice parole officer Crystal Washington appeals her convictions for conspiracy to possess with the intent to distribute heroin, in violation of 21 U.S.C. § 846, and for conspiracy to commit extortion under the color of official right and extortion under the color of official right, in violation of 18 U.S.C. § 1915(a). She argues that the evidence was insufficient to support each count of conviction. Because

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20547

Washington did not renew her motion for judgment of acquittal at the close of the evidence, review is limited to plain error, requiring her to show a clear or obvious error affecting her substantial rights. *United States v. Delgado*, 672 F.3d 320, 329-32 (5th Cir. 2012) (en banc). Under this test, there must be a manifest miscarriage of justice, meaning that the record must be devoid of evidence of guilt or that the evidence is so tenuous as to render the verdict shocking. *Id.* at 330-31. The evidence, and all inferences therefrom, are reviewed in the light most favorable to the verdict. *United States v. Rose*, 587 F.3d 695, 702 (5th Cir. 2009).

Washington fails to meet this heavy burden. She first contends that the Government did not prove that there was an express or implied agreement between her and Abel Ramirez, a parolee under her supervision, and that, although she may have been aware of his drug dealing, her knowledge did not amount to a tacit agreement allowing him to continue. The argument is unpersuasive as the trial evidence, viewed in the light most favorable to the jury's verdict, showed that Washington knowingly assisted Ramirez in avoiding detection for his drug trafficking by tipping him off to the police's initial investigation, advising him to get rid of his cellphone as the police were using it to track his activities, and falsely reporting clean urinalysis test results despite Ramirez's admittedly regular heroin use. Washington's assertion that she advised Ramirez of the police investigation solely in her capacity as his parole officer is defeated by the uncontroverted testimony from her supervisor, Leslie Clay, that parole officers have no duty to advise parolees that they are under investigation, and it is further undermined by Washington's failure to note the investigating officer's phone call in Ramirez's parole records. Moreover, the Government submitted audio recordings of a meeting between Ramirez and Washington confirming that Ramirez

No. 14-20547

specifically told Washington that the $1,000 he was giving her resulted from his recent sale of heroin in Atlanta.  The record is thus not devoid of evidence showing that Washington tacitly agreed with Ramirez to violate the drug-trafficking laws and voluntarily participated in profiting from that conspiracy. *See United States v. Wallace*, 759 F.3d 486, 491 (5th Cir. 2014); *United States v. Thomas*, 690 F.3d 358, 366 (5th Cir. 2012); *see also Delgado*, 672 F.3d at 331, 333.

Washington's challenge to the sufficiency of the evidence to support her convictions under the Hobbs Act is similarly unavailing.  She argues that the Government failed to establish a sufficient nexus between her wholly local conduct and interstate commerce.  Alternatively, she contends that the Government failed to prove extortion or conspiracy to commit same; more specifically, she asserts that the evidence fails to show that she accepted money from Ramirez in exchange for the performance or nonperformance of any official act.

Viewed in the light most favorable to the verdict, the trial evidence established that Ramirez was dealing in black tar heroin, manufactured exclusively in Mexico; that he was selling approximately $500 worth of heroin daily over the course of several years; that he made payments to Washington from his drug proceeds; that Washington knew about and ignored his drug dealing; and that Washington's failure to note the police investigation, advice to Ramirez to throw away his cellphone, and false reports of clean urinalysis tests enabled Ramirez to continue his trafficking.  Although Ramirez may have been considered a "small-time" dealer, Washington's facilitation of his local drug trafficking and depleting drug trafficking funds sufficiently established the requisite interstate commerce nexus, particularly under the plain-error standard.  *See United States v. Villafranca*, 260 F.3d 374, 378 (5th Cir. 2001);

*United States v. Box*, 50 F.3d 345, 353 (5th Cir. 1995); *see also Delgado*, 672 F.3d at 330-31.

Similarly, the record is not devoid of evidence showing the requisite extortion and conspiracy to commit same. *See id.* at 331. Washington urges that the evidence fails to demonstrate an explicit agreement to extort money from Ramirez and instead shows only that she was a parole officer who fell on hard financial times and used poor judgment in accepting assistance from a parolee. Her argument ignores the trial evidence that showed a tacit agreement whereby she accepted cash bribes from Ramirez in exchange for overlooking his heroin dealing and assisting him in obtaining a lesser parole reporting requirement or early termination. Ramirez's testimony and the audio recordings established that Washington solicited bribes through tales of financial hardship, then identified other parolees whose reporting requirements she had successfully lowered after they gave her greeting cards filled with cash. Ramirez understood that if he continued to pay Washington, she would do the same for him. The audio recordings additionally revealed that, after accepting $1,000 from Ramirez, Washington promised to "take care of" him. Ramirez's parole records, which made no mention of the police contacting her regarding a drug investigation, Ramirez's drug use, or the cash she accepted from Ramirez, and which falsely reported clean urinalysis results, further corroborate Ramirez's testimony establishing a tacit agreement to pay Washington to perform or fail to perform her official duties as a parole officer. *See United States v. Wright*, 797 F.2d 245, 250 (5th Cir. 1986); *see also United States v. Stephens*, 964 F.2d 424, 427-28 (5th Cir. 1992)

Washington has failed to show a manifest miscarriage of justice or reversible plain error. *See Delgado*, 672 F.3d at 330-31. Accordingly, the district court's judgment is AFFIRMED.