United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 27, 2004**

Charles R. Fulbruge III
Clerk

**REVISED MARCH 25, 2004**

# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

_____

No. 01-51099
_____

GDF REALTY INVESTMENTS, LTD; PARKE PROPERTIES I, LP;

PARKE PROPERTIES II, LP

> Plaintiffs - Appellants

    v.

GALE A NORTON, Secretary, US Department of the Interior;

MARSHALL P JONES, Director, US Fish & Wildlife Service

> Defendants - Appellees

Appeal from the United States District Court for the
Western District of Texas, Austin.

ON PETITION FOR REHEARING AND REHEARING EN BANC

(Opinion 3/26/03, 5 Cir.,_____, _____ F.3d _____)

Before DAVIS, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:


The Petition for Rehearing is DENIED and the court having been polled at the request of one of the members of the court and a majority of the judges who are in regular active service not having voted in favor, (FED. R. APP. P. and 5TH CIR. R. 35) the Petition for Rehearing En Banc is also DENIED.

1

EDITH H. JONES, Circuit Judge, joined by JOLLY, SMITH, DEMOSS, CLEMENT and PICKERING, Circuit Judges, dissenting from the denial of rehearing en banc:

A majority of the court has refused to rehear this significant Endangered Species Act case en banc. I respectfully dissent. For the sake of species of 1/8-inch-long cave bugs, which lack any known value in commerce, much less interstate commerce, the panel crafted a constitutionally limitless theory of federal protection. Their opinion lends new meaning to the term reductio ad absurdum.

The panel holds that because "takes" of the Cave Species ultimately threaten the "interdependent web" of all species, their habitat is subject to federal regulation by the Endangered Species Act. Such unsubstantiated reasoning offers but a remote, speculative, attenuated, indeed more than improbable connection to interstate commerce. Chief Justice Marshall stated in Cohens v. Virginia, 19 U.S. 264 (1821), that Congress has no general right to punish murder or felonies generally. Surely, though, there is more force to an "interdependence" analysis concerning humans, and thus a more obvious series of links to interstate commerce, than there is to "species." Yet the panel's "interdependent web" analysis of the Endangered Species Act gives these subterranean bugs federal protection that was denied the school children in Lopez and the

rape victim in <u>Morrison</u>.  The panel's commerce clause analysis is in error.

## I.   Background

To recap the facts, this case involves a 20-year effort to develop a large tract of land west of Austin, Texas.  This once-rural property contains a cluster of limestone caves.  After obtaining all necessary state and local permits, the landowner-appellants began commercial development.  Between 1988 and 1993, however, the United States Fish and Wildlife Service ("FWS"), designated six species ("Cave Species") of tiny bugs, which dwell solely in the caves and never emerge on the surface of the land, as endangered under section 4 of the ESA.  <u>See</u> 16 U.S.C. § 33(a)(1).  Pursuant to section 9(a)(1) of the ESA, it became unlawful to take a member of the endangered species.  A "take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture or collect . . . ."  16 U.S.C. § 1532(19).  The ESA broadly defines "harm" as including significant modifications or degradations of a habitat which kill or injure protected wildlife "by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering."  50 C.F.R. § 17.3.

After years of wrangling with and attempting to appease the FWS, the landowners remained unable to commercially develop their land.  Accordingly, they sued on the theory that the ESA

3

"take" provision is unconstitutional as applied to these Cave Species. The district court granted summary judgment to FWS, finding that it would be "hard-pressed to find a more direct link to interstate commerce than a Wal-Mart." GDF Realty Investment, Ltd. v. Norton, 169 F.Supp 2d 648, 662 (W.D. Tex. 2001). On appeal, the panel affirmed the district court's judgment on wholly different grounds.

## II. Discussion

Congress's power "to regulate commerce . . . among the several states . . ." is, like all enumerated powers, subject to outer limits. See United States v. Lopez, 514 U.S. 549, 556–57 (1995); Solid Waste Agency of North Cook County v. U.S. Army Corps of Engineers, 531 U.S. 159, 173 (2001) (reiterating that "the grant of authority to Congress under the commerce clause, though broad, is not unlimited"). The commerce clause "may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government." NLRB v. Jones and Laughlin Steel, 301 U.S. 1, 37 (1937).

It is unnecessary to recapitulate the Supreme Court's Lopez and Morrison cases at any length. See, generally, United

4

States v. Morrison, 529 U.S. 598 (2000). Lopez defines three categories of federal regulation that are consistent with the commerce clause. Lopez 514 U.S. at 558. At issue here is whether federal regulation of the Cave Species is permissible under the third Lopez category — i.e., whether takes of the Cave Species "substantially affect interstate commerce." Lopez, 514 U.S. at 558-59.[1]

In Lopez, reiterated in Morrison, the Court outlined four considerations in determining whether purely intrastate activity substantially affects interstate commerce: (1) the commercial or economic nature of the intrastate activity; (2) the presence of a jurisdictional element in the statute; (3) the existence of congressional findings or legislative history demonstrating a link between the regulated activity and interstate commerce; and (4) how attenuated is the link between the intrastate activity and its effect on interstate commerce. See Morrison, 529 U.S. 609-12 (2000).[2]

---

[1]The panel found, and the parties do not dispute, that the first two Lopez categories, involving the channels or instrumentalities of interstate commerce, do not justify regulation of the Cave Species. GDF Realty, 326 F.3d at 629.

[2]Pertinent parts of the Endangered Species Act contain no statutory jurisdictional link between federal regulation and interstate commerce. Likewise, legislative history and congressional findings fail to tie species protection to commerce. These parts of the analysis concerning federal regulation of intrastate activity do not favor FWS.

In certain instances, an intrastate activity alone may substantially affect interstate commerce. See Jones and Laughlin Steel, 301 U.S. at 22 (NLRB order concerning unfair labor practices at a steel mill directly affected interstate commerce). In other instances, "the regulation can reach intrastate commercial activity that by itself is too trivial to have a substantial effect on interstate commerce but which when aggregated with similar and related activity, can substantially affect interstate commerce." United States v. Ho, 311 F.3d 589, 599 (5th Cir. 2002); see also Wickard v. Filburn, 317 U.S. 111, 127-28 (1942).

As an initial matter, the panel correctly determined, unlike other courts, that the "regulated activity" under the ESA is Cave Species takes, not the appellants' planned commercial development of the land. GDF Realty, 326 F.3d at 633-34 (recognizing that "looking beyond the regulated activity . . . would 'effectually obliterate' the limiting purpose of the Commerce Clause") (citing Jones and Laughlin Steel, 301 U.S. at 37); Ho, 311 F.3d at 602 (recognizing that the regulated activity at issue was asbestos removal, rather than the plaintiff's commercial enterprise); but see Rancho Viejo, LLC v. Norton, 323 F.3d 1062 (D.C. Cir. 2003) (finding that the regulated activity

was not the ESA take but rather the "construction of a commercial housing development").

Next the panel examined whether Cave Species takes, alone, have a "direct relationship" with and substantial effect on interstate commerce. GDF Realty, 326 F.3d at 637. FWS offered two theories for such a "direct relationship:" (1) the "substantial" scientific interest the Cave Species generate; and (2) possible future commercial benefits. The panel properly rejected each argument as speculative or too attenuated to commerce.

The panel finally turned to FWS's argument that Cave Species takes, although intrastate and non-economic in themselves, may be aggregated with all other endangered species, permitting the entirety of the regulatory scheme to pass constitutional muster.[3] "At issue is what circumstances must be present in order to justify aggregation when, as in this case, intrastate activity has a *de minimis* effect on interstate commerce." GDF Realty, 326 F.3d at 638. The panel concluded that this case warranted aggregation under Lopez and Morrison, because FWS's actions are essential to preserving an "economic"

---

[3]The appellants concede that, if aggregated with all endangered species, the Cave Species takes would have a substantial effect on interstate commerce.

7

regulatory program.  Id. at 639.  I respectfully disagree.  The panel's approval of aggregation in this case would not only sustain every conceivable application of the ESA, but entirely undercuts Lopez and Morrison.

To explain the problem, a brief historical review of the aggregation principle is required.  This court recognized in Ho that the aggregation principle "reached its zenith in Wickard, 'perhaps the most far-reaching example of commerce clause authority over intrastate activity.'"  Ho, 311 F.3d at 599 (quoting Lopez, 514 U.S. at 560).  In Wickard, the Supreme Court upheld regulation of an intrastate farmer's personal consumption of home-grown wheat under the Agricultural Adjustment Act of 1938 because, ". . . his contribution [to the wheat market], taken together with that of many others similarly situated, is far from trivial."  Wickard, 317 U.S. at 127-28.  A primary purpose of the act in question was, as the Court noted, "to increase the market price of wheat and to that end to limit the volume thereof that could affect the market."  Id. at 90.

After Wickard, the Court has sustained commerce clause legislation using aggregation in instances where Congress was regulating commercial activity.  See Katzenbach v. McClung, 379 U.S. 294 (1964) (prohibiting refusal of restaurant service to interstate travelers); Heart of Atlanta Motel v. United States,

8

379 U.S. 241 (1964) (prohibiting refusal of hotel accommodations to interstate travelers); Maryland v. Wirtz, 392 U.S. 183 (1968) (regulating wages of employees of business engaged in interstate commerce); Perez v. United States, 402 U.S. 146 (1971) (regulating loan sharking); Hodel v. Virginia Surface Mining and Reclamation Association,452 U.S. 246 (1981) (regulating coal industry); see Lopez, 514 U.S. at 560 (recognizing these "examples are by no means exhaustive, but the pattern is clear").

In both Lopez and Morrison, by contrast, the federal government's efforts to sustain non-economic criminal laws under the commerce clause through aggregation were rebuffed. In Lopez, only Justice Breyer's dissent accepted the theory that discrete instances of gun possession in a school zone, when aggregated, increased the costs of crime and reduced national productivity so as to justify the Gun-Free School Zones Act of 1990. See Lopez, 514 U.S. at 618-624 (Breyer, J. dissenting). The Court majority rejected aggregation, because it would allow Congress to regulate "all activities that might lead to violent crime, regardless of how tenuously they relate to interstate commerce." Id. at 564. The Court concluded that, "if we were to accept the government's arguments, we are hard pressed to posit any activity by an individual that Congress is without power to regulate." Id.

Likewise, in Morrison, the Court rejected arguments concerning the aggregate effects of sex-based crime on national productivity, increased medical and other costs, and a decreased supply and demand for interstate goods. Morrison, 529 U.S. at 615. Again, the Court concluded that aggregation "would allow Congress to regulate any crime as long as the nationwide, aggregated impact of that crime has substantial effects on employment, production, transit or consumption." Id. (adding that "the concern we expressed in Lopez that Congress might use the Commerce Clause to completely obliterate the Constitution's distinction between national and local authority seems well-founded") (citing Lopez, 514 U.S. at 564).

Together, these cases strongly suggest that when the Supreme Court has sustained Commerce Clause regulation under the aggregation principle, "the regulated activity was of an apparent commercial character." Morrison, 529 U.S. at 611. Nevertheless, Morrison declined to create a categorical rule "against aggregating the effects of non-economic activity," even as it observed, "thus far in our nation's history our cases have upheld Commerce Clause regulation of intrastate activity only where the activity is economic in nature." Id. at 613.

The panel recognized that "[i]n light of Lopez and Morrison, the key question for purposes of aggregation is whether

10

the nature of the regulated activity is economic." GDF Realty, 326 F.3d at 630. The panel conceded that "in a sense, Cave Species takes are neither economic nor commercial. There is no market for them; any future market is conjecture." GDF Realty, 326 F.3d at 638. The panel added that "[i]f the speculative future medical benefits from Cave Species makes their regulation commercial, then almost anything would be." Id. Furthermore, "there is no historic trade in the Cave Species, nor do tourists come to Texas to view them." Id. Finally, the panel rejected the government's argument that Cave Species takes become commercial in character once aggregated with other endangered species. Id. "To accept such a justification would render meaningless any 'economic nature' prerequisite to aggregation." Id.

Nevertheless, the panel aggregated the Cave Species takes with all takes of all endangered species because: (1) they are part of a larger regulation that is "directed at activity that is economic in nature" and (2) the intrastate activity (Cave Species takes) is an "essential part of the economic regulatory scheme." Id. at 639 (internal citations and quotations omitted).

How the panel's conclusion follows from its generally excellent preceding discussion of Lopez and Morrison, I cannot fathom. The panel offers little reasoning why any take of a Cave

11

Species is (a) part of a larger "economic" regulatory scheme; (b) so essential to the larger national scheme that the accidental crushing of one Cave Species underfoot (or even the diminutive species' destruction) threatens to undo the national program; and (c) so significant to the commerce clause that Congress, for the first time in U.S. history, is authorized to aggregate purely intrastate, non-economic activity.

It is undeniable that many ESA-prohibited takings of endangered species may be regulated, and even aggregated, under Lopez and Morrison because they involve commercial or commercially-related activities like hunting, tourism and scientific research. On this basis, the Fourth Circuit decision in Gibbs v. Babbitt, 214 F.3d 483, 493-96 (4th Cir. 2000), approved federal red wolf regulations. Under reasoning like that in Gibbs, aggregation may be sustained on a species-by-species basis or across certain categories of species. The pursuit of hunting trophies, for instance, affects markets for hunting, outfitting, taxidermy, etc. Where the link between endangered species takes and commercial or economic activity is plain, courts need not be concerned about the limits of the aggregation principle.

But in this case, there is no link — as the panel concedes — between Cave Species takes and any sort of commerce,

12

whether tourism, scientific research, or agricultural markets. Compare Gibbs, 214 F.3d at 493-95. The cautions expressed in Morrison about aggregation of wholly intrastate non-economic activity should be taken seriously by the courts. See GDF Realty, 326 F.3d at 628. Elsewhere in its opinion, the panel was quite emphatic about this, saying "the possibility of future substantial effects of the Cave Species on interstate commerce . . . is simply too hypothetical and attenuated from the regulation to pass constitutional muster." Id. (citing Morrison, 529 U.S. at 612) (emphasis in original).

When the panel nevertheless approves the application of the ESA to these Cave Species, its opinion becomes confusing and self-contradictory. First, the panel attempts to convert the ESA to an economic regulatory statute by opining that the majority of species takes would result from economic activity, and "the Cave Species takes would occur as a result of plaintiffs' planned commercial development." GDF Realty, 326 F.3d at 639. The panel had, however, rejected this argument earlier, when it found that the regulated activity is the take, not the planned commercial land development. GDF Realty, 326 F.3d at 633-34. As the panel itself understood, this "analysis would allow application of otherwise unconstitutional statutes to commercial actors, but not non-commercial actors. There would be no limit to Congress'

13

authority to regulate intrastate activities, so long as those subjected to the regulation were entities which had an otherwise substantial connection to interstate commerce." Id. at 634.[4]

Second, the panel states that Cave Species takes are essential to the ESA, because any take of any species "threaten[s] the interdependent web of all species." GDF Realty, 326 F.3d at 640 (internal quotations omitted). Under the panel's approach, "the essential purpose of the ESA is to protect the ecosystems upon which we and other species depend." Id. (quoting H.R. Rep. No. 93-412, at 10). Further, every take is "essential" to the ESA because the extinction of any species risks the extinction of all species, and the extinction of all species could lead to the extinction of ecosystems. GDF Realty, 326 F.3d at 640. At one level, this is no more than the "but-for-causal chain" approach twice rejected by the Supreme Court in Lopez and Morrison. Hence, "the Lopez Court declined to apply the aggregation principle in conjunction with long chains of causal inference that would have been necessary to arrive at a substantial effect on interstate commerce." United States v. Wang, 222 F.3d 234, 239 (6th Cir. 2000). An even more obvious

---

[4]Arguably, Congress could pass a statute prohibiting anyone engaged in interstate commerce from "taking" endangered species. But Congress did not do so in these parts of the statute.

14

dissonance between the panel opinion and <u>Lopez</u>, <u>Morrison</u> and the Constitution is that the Commerce Clause regulates commerce, not ecosystems.[5]

Third, while the panel acknowledges the Supreme Court's concern that federal legislation under the Commerce Clause must have a limiting principle so as not to obliterate the distinction between that which is truly national and that which is local, the panel's conclusion tramples that precept. The panel concludes, summarily, that its "interdependent web" approach "will not allow Congress to regulate land use or wildlife preservation." <u>GDF Realty</u>, 326 F.3d at 640. I disagree. Once the FWS designates a species as endangered, the Government has functional control over the land designated as its habitat. If such authority is not justified by a federal interest in regulating interstate

---

[5]That a true, not merely conjectural, economic activity must be the subject of Congress's regulation is reinforced by our court's debates over the Hobbs Act. In <u>United States v. Robinson</u>, 119 F.3d 1205 (5th Cir. 1997), the panel reasoned that any robbery of a business that has an effect on interstate commerce under the Hobbs Act's express jurisdictional requirements may be aggregated with other similar crimes for purposes of establishing a "substantial effect." Here, there is no jurisdictional element, and the only aggregate effect articulated by the panel is on biodiversity, which the panel somehow equates with "economic" or commercial activity. It seems clear, though, that biodiversity is a condition of nature, not a human activity. The panel's opinion goes farther than <u>Robinson</u> in permitting aggregation to overcome a commerce clause challenge.

15

commerce, it "would result in a significant impingement of the States' traditional and primary power over land and water use." Solid Waste Agency, 531 U.S. at 173-74.[6]

Perversely, federal protection of the Cave Species has become a device to thwart not only these appellants' prospects of land development but also the State's construction of a highway, the quintessential modern artery of commerce. See "Dateline Texas: Officials at Odds over Spider Habitat," Houston Chron., Feb. 22, 2004, at 35A (to get federal approval for highway construction over two limestone caverns housing the Cave Species, "state highway administrators must find a site in Williamson County that is also home to the endangered species and permanently preserve that site").

---

[6]Contrary to recent Supreme Court authority, the panel interprets the Endangered Species Act extremely broadly to permit the federal government to regulate a matter of unique local concern. See Solid Waste Agency, 531 U.S. at 172-173 (Congressional authority must be narrowly construed "where the administrative interpretation alters the federal-state framework by permitting federal encroachment upon a traditional state power."). Further, "where an otherwise acceptable construction of a statute would raise serious constitutional problems, [courts] will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." Id. (quoting Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988)). Regulation of land use is traditionally the province of state and local governments. Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 44 (1994).

16

The panel also concludes, without explanation, that "the link" between Cave Species takes "and a substantial commercial effect is not attenuated." GDF Realty, 326 F.3d at 640. The panel's reasoning — all takes are essential, therefore, all takes have a substantial commercial effect — is circular. Even aside from this problem, the Fifth Circuit and other courts have recognized that in an otherwise constitutional federal regulatory scheme, some applications may go too far. See e.g., United States v. Collins, 40 F.3d 95, 99 (5th Cir. 1994) (robbery of an individual citizen not covered under the Hobbs Act); United States v. Wang, supra (same); United States v. Quigley, 53 F.3d 909, 910-11 (8th Cir. 1995). In fact, the panel's reasoning contradicts Collins, inasmuch as it would authorize federal criminal prosecution under the ESA of a landowner, or even an FWS agent, who climbed down into one of the caves in order to study the Cave Species and crushed one. See 16 U.S.C. §§ 1538-1540; compare Rancho Viejo, supra, 323 F.3d at 1080 (Ginsburg, J., concurring) (". . . our rationale for concluding the take of the arroyo toad affects interstate commerce does indeed have a logical stopping point . . . Just as important, however, the lone hiker in the woods, or the homeowner who moves dirt in order to landscape his property, though he takes the toad, does not affect interstate commerce.").

17

In the end, the panel is unable to refute the attenuation concern of <u>Lopez</u> and <u>Morrison</u> because its analysis rests on the false implication that all takes of all species necessarily relate to an ecosystem, which by its very grandiosity must at some point be "economic" in actuality or in effect. This is precisely the reasoning rejected by the Supreme Court. Not all crime is "economic" for commerce clause purposes, in actuality or effect, even though any or all of its human victims may become impoverished. Not all crimes against women are "economic" in practicality or effect, despite the same possible consequences. The Commerce Clause does not regulate crime, sexual inequity, or ecosystems as such — it regulates commerce. Thus, I reiterate: many applications of the ESA may be constitutional, but this one simply goes too far. To be faithful to the Supreme Court's principles in <u>Lopez</u> and <u>Morrison</u> and this court's Commerce Clause decisions, we should rehear this case <u>en banc</u>.

18